**In re GRAND JURY SUBPOENAS, 89–3 AND 89–4, JOHN DOE 89–129.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**UNDER SEAL,\* Defendant–Appellant.**

**No. 90–5901.**

United States Court of Appeals, Fourth Circuit.

Argued April 24, 1990.

Decided April 26, 1990.

---

\* The papers in this case are presently under seal because they concern ongoing proceedings before two grand juries in the Eastern District of Virginia. There are no national security overtones in the case and none should be inferred. The papers will be made public at an appropriate time. For convenience, we will refer to the moving party as "Movant," as did the district court, and its division or subsidiary or joint prosecutor or defender of administrative claims, simply as "Subsidiary."

Milton Eisenberg, argued, Jack B. Gordon, Bruce J. Casino, Jonathan M. Jacobson, on brief, Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., for defendant-appellant.

Mark J. Hulkower, Asst. U.S. Atty., argued, Henry E. Hudson, U.S. Atty., on brief, Alexandria, Va., for plaintiff-appellee.

Before ERVIN, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

The district court in this case granted Movant's motion to quash subpoenas issued by two grand juries with respect to certain papers in its possession on the grounds of attorney-client privilege or work-product privilege, or both, and held that the Government had not established a prima facie case for the crime-fraud-tort exception to the attorney-client privilege. 734 F.Supp. 1206. It also held that the Government was, nevertheless, on the ground of necessity, entitled to certain statements of witnesses contained in the papers otherwise subject to the work-product privilege. But as to the papers in the possession of Subsidiary, which had waived all privileges it might possess, the district court held that all privileges had been waived by the Subsidiary as to a part of the papers, and that no joint defense privilege applied to the balance thereof. The effect of the district court's order was thus to the effect that the Subsidiary had to turn over all of the papers in its possession to the grand jury although the papers might well be subject to either an attorney-client or work-product privilege. We affirm in part, vacate in part, and remand.

In 1984 the United States Army awarded to Movant a contract to provide the Army with certain services. These services were performed by an unincorporated division of Movant for several years. In 1988, Movant created a wholly-owned subsidiary which, as stated before, we will call simply Subsidiary. Subsidiary, as a division and as a corporation, performed the services contracted for by Movant in its contract with the Army. The contract between Movant and the Army was assigned by Movant to Subsidiary but an agreement approving such assignment or novation has not been executed by the Army.

During Movant's performance of its contract with the Army, it became involved in several disputes concerning the obligations of the parties under the contract. In 1985, Movant filed an administrative claim, under certain contractual provisions, for an equitable adjustment to the terms of the contract. It alleged that omissions on the part

of the Army had increased the costs of its performance and delayed its completion. In 1985, the Army's contracting officer issued a decision denying Movant's claim and asserting a counter-claim against Movant by the Army on account of damages for delay. Movant then filed its appeal with the Board of Contract Appeals. Movant continued to prosecute the claim against the Army and to defend against the counter-claim. The claim and counter-claim were settled in October of 1989 under what the parties call a walk-away agreement, which apparently means that neither side took anything from the controversy. In September 1988 Movant sold 40% of the stock in Subsidiary to four strangers and sold an additional 20% in January 1989 to four other strangers, thus giving up control of Subsidiary. It sold another 5% in October 1989 and the remainder of its Subsidiary stock in January 1990.

The district court found as a fact that from 1984 until Subsidiary was sold, Subsidiary, first as a division of Movant, then as a true subsidiary, and later as an uncontrolled corporation, "generated documents in connection with administering and performing the contract." Neither party to this dispute takes any exception to that statement.

The order of the district court appealed from was filed April 13, 1990, and the notice of appeal by Movant was filed April 18, 1990. In the meantime, on April 16, 1990, Movant filed a motion for reconsideration, having to do with none of the matters here involved, which was effectively granted by the district court on April 17, 1990. On April 17, 1990, Movant also filed a paper called "Supplemental Memorandum." This paper contained an attachment in the form of a letter agreement between Movant and Subsidiary that the cost and expense of prosecuting the claim against the Army was the sole responsibility of Subsidiary, for the disposition of the proceeds of any recovery, and required Movant's prior consent for settlement at less than a given figure. All in all, the agreement would certainly be evidence which tends to show a joint prosecution by Movant and Subsidiary of the claim against the Army. The record does not show that the letter agreement was before the district court when it entered the order appealed from.

Because of the filing of that paper, we must decide a preliminary question in this appeal. The Government takes the position that that paper is a motion to alter or amend a judgment under FRCP 59, and, since it was not acted upon by the district court prior to the filing of the notice of appeal, the notice of appeal filed by Movant a day later, on April 18, 1990, was of no effect under FRAP 4(a)(4) which provides that a premature notice shall have no effect but that a new notice of appeal must be filed within the prescribed time. Thus, the Government asks us to dismiss the appeal because of the claimed lack of effect of the notice of appeal which was filed on April 18, 1990.

Movant, on the other hand, states that this is an appeal in a criminal case rather than in a civil case. And so, even if the supplemental memorandum amounted to a motion to alter or amend a judgment, our jurisdiction to hear the appeal should not be adversely affected absent prejudice. In this connection, Movant states that the Government had the letter agreement in its possession for a month or two prior to the order of the district court appealed from, so it could not have been prejudiced. Without opportunity to search its papers, the Government's attorney states that he has no recollection of the earlier delivery of the paper one way or the other, but he does not deny receiving it. It may well be that the addition of the letter agreement would make a showing of clearly erroneous of a part of the district court's fact finding easier to come by. We do not have to decide that, however, for we think that the papers before us, as well as the fact finding the district court did make, require us to find that there was a joint effort between Movant and Subsidiary both in the prosecution of the claim against the Army and in defense of the Army's counter-claim. This is shown by what we take as a recognition by the district court of Movant's "cooperation with the Subsidiary in pursuing the Mov-

ant's claim against the Government for performance of the contract." In this connection, we note that the district court had at hand some information with respect to any recovery, for it found that "Movant agreed that the Subsidiary would receive a portion of any monetary award involved." Despite all the facts that we have recited, the district court then apparently held that there was no joint defense privilege because there was no joint defense and that Subsidiary "merely" had a "pecuniary interest" in the litigation.

■ So far as the Government's suggestion that we dismiss this appeal for failing to file properly a notice of appeal, we think the suggestion is not well taken and deny it. We are of opinion this proceeding is criminal rather than civil so that FRAP 4(b) applies to the proceeding rather than FRAP 4(a). The Government relies on *In Re Grand Jury Proceedings (Manges)*, 745 F.2d 1250 (9th Cir.1984), which, in the same context present here, held that an appeal from an order of the district court denying a motion to quash was civil rather than criminal and governed by FRAP 4(a) rather than 4(b) so that a notice of appeal filed 27 days after the district court's order was timely. The Movant relies on *In Re Grand Jury Proceedings (Company X)*, 835 F.2d 237 (10th Cir.1987), which, on an appeal from an order of the district court denying a motion to quash, held that FRAP 4(b), with its 10–day time limit for filing a notice of appeal, applied and that a notice of appeal filed 18 days after the entry of the district court's order was untimely. We only briefly discuss the matter. *Company X* relies largely on the policy considerations supporting prompt disposition of appeals of decisions in criminal cases, especially those relating to grand jury proceedings, while *Manges* relies on previous circuit precedent. We are of opinion that the policy considerations favoring prompt disposition of appeals in criminal matters, especially with respect to grand jury proceedings, such as here, should be persuasive, and we hold that this is a criminal matter governed by FRAP 4(b). See also *In Re Grand Jury Subpoena Duces Tecum dated January 2, 1985, (Simels)*, 775 F.2d 499 (2d Cir.1985),

which held in the context of a claim for costs that a motion to quash a grand jury subpoena was not a civil action. We think that *Manges* from the Ninth Circuit, together with the opinions from the Tenth and Second Circuits, contains all the relevant authorities necessary for a disposition of this question, and we will add nothing further except to repeat that we think policy considerations for the prompt disposition of such appeals should control our disposition.

Because we do not have to consider the supplemental memorandum to arrive at our conclusion that there was a joint undertaking of the prosecution of the claim against the Army by Movant and Subsidiary, and a joint defense of the counter-claim, there could have been no prejudice merely from its filing. *United States v. Green*, 847 F.2d 622 (10th Cir.1988). So we consider the appeal on its merits.

Before proceeding further, we should make it perfectly clear that for the Government to prevail in this appeal at all, it must rely on the waiver of privilege by Subsidiary, for the district court has held that a privilege might attach to all of the documents in question, and the correctness of that ruling is not before us on appeal. If Subsidiary is capable of waiver, as a matter of law, in the context present here, it is also capable of the joint prosecution of a claim against the Government or of a defense thereto.

The district court divided the papers as to which privilege was claimed into three groups. Group I documents are those prepared during the existence of Subsidiary as a division of Movant and prior to the creation of Subsidiary as a corporate entity. Group II documents are those prepared while Subsidiary was a corporate entity but was controlled by Movant. Group III documents are those which came into existence after the controlling stock in Subsidiary was sold by Movant. We may refer to the documents by those group numbers, but for our purposes, a more significant division of the papers involves dividing them into papers relating to the prosecution of the claim against the Army for an

equitable adjustment and those prepared for the defense of the counter-claim on the one hand, and those papers not related either to the prosecution of the claim against the Army for equitable adjustment or the defense of the counter-claim by the Army. In this connection, it should be remembered that we decide that both the prosecution of the claim and the defense of the counter-claim were joint efforts on the part of Movant and Subsidiary.

In the case of *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), the Court decided that an attorney-client privilege which had belonged to a brokerage firm could be waived by a trustee in bankruptcy of the brokerage firm. *Weintraub* was a case in which, as a part of a formal investigation of a brokerage firm by the Commodity Futures Trading Commission, a subpoena was issued to the attorney who had been the attorney for the brokerage firm before its bankruptcy, the subpoena having been issued after bankruptcy. The attorney declined to answer some of the numerous inquiries put to him, asserting the attorney-client privilege, whereupon the privilege was waived by the trustee in bankruptcy, although it is at once apparent that the privilege had arisen prior to the bankruptcy. The Court upheld the waiver of the privilege. It stated that for solvent corporations the power to waive the corporate attorney-client privilege rests with the corporation's management. The court then decided that the functions of the trustee were analogous to those asserted by management outside of bankruptcy and upheld the waiver for that reason.

■ Not only because of the obvious analogy drawn between *Weintraub* and this case is that decision persuasive. In *Weintraub* the Court addressed almost in terms the problem now facing us with respect to those papers not related to the prosecution of the claim against the Army or the defense of the counter-claim. It stated, "New managers installed as a result of a takeover, merger, loss of confidence of shareholders, or simply normal succession may waive the attorney-client privilege with respect to communications made by former officers and directors." 471 U.S. at 349, 105 S.Ct. at 1991. While this statement in the context present here is *dictum*, and perhaps might have been in *Weintraub*, nevertheless it is a consideration of the subject at hand by the highest authority, and we find it persuasive. When Movant established Subsidiary, and with its consent, and it must be assumed approbation, caused the management of Subsidiary to change from that of a true subsidiary to that of an independent corporation, there was a change of management in the normal course of business. The attorney-client or work-product privilege attaching to any of the papers involved in this case and not related to the prosecution of the claim or the defense of the counter-claim above mentioned became Subsidiary's to waive, should it be so advised. The management of Subsidiary has concluded to waive that privilege, and as to those papers we have just mentioned not related to the claim and counter-claim, we are of opinion the district court's decision was correct and its sustaining the waiver of privilege by Subsidiary is affirmed.

The documents in Subsidiary's possession that relate to the prosecution of the civil claim against the Army, however, stand on a different footing. Movant argues that, even if its divestiture of Subsidiary gives Subsidiary the right to unilaterally waive any privilege in documents not related to the claim against the Army, claim-related documents are subject to a joint defense privilege that Subsidiary cannot waive without Movant's consent.

■ The concept of a joint defense privilege first arose in the context of criminal co-defendants whose attorneys shared information in the course of devising a joint strategy for their clients' defense. *See, e.g., Chahoon v. Commonwealth*, 62 Va. (21 Gratt.) 822 (1871). An exception to the general rule that disclosure to a third party of privileged information thereby waives the privilege, a joint defense privilege cannot be waived without the consent of all parties who share the privilege. *Chahoon*, 62 Va. at 842.

■ Because " '[t]he need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter,' " *United States v. Schwimmer*, 892 F.2d 237, 243–44 (2d Cir.1989), courts have extended the joint defense privilege to civil co-defendants, *Western Fuels Ass'n, Inc. v. Burlington Northern R.R. Co.*, 102 F.R.D. 201 (D.Wyo.1984); companies that had been individually summoned before a grand jury who shared information before any indictment was returned, *Continental Oil Co. v. United States*, 330 F.2d 347 (9th Cir.1964); potential co-parties to prospective litigation, *In Re LTV Securities Litigation*, 89 F.R.D. 595 (N.D.Tex. 1981); plaintiffs who were pursuing separate actions in different states, *Schachar v. American Academy of Ophthalmology*, 106 F.R.D. 187 (N.D.Ill.1985); and civil defendants who were sued in separate actions, *Transmirra Products Corp. v. Monsanto Chemical Co.*, 26 F.R.D. 572 (S.D.N.Y.1960). Thus, as the cases cited above indicate, today the joint defense privilege is "more properly identified as the 'common interest rule.' " *Schwimmer*, 892 F.2d at 243. Finally, as an exception to waiver, the joint defense or common interest rule presupposes the existence of an otherwise valid privilege, and the rule applies not only to communications subject to the attorney-client privilege, but also to communications protected by the work-product doctrine. *Transmirra*, 26 F.R.D. at 578.**

■ A review of cases applying the joint defense privilege reveals no principled basis upon which to distinguish Movant's relationship with Subsidiary from similar situations in which courts have upheld the privilege. Although the government notes, as did the district court, that Movant and Subsidiary were not criminal co-defendants, and that Subsidiary was not named as a party in either the civil claim against the Army or in the Army's counter-claim, we have discovered no case in which the existence of a joint defense or common interest

privilege turned on such distinctions. Whether an action is ongoing or contemplated, whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or criminal, the rationale for the joint defense rule remains unchanged: persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims. The district court's ruling, apparently based on the notion that the joint defense privilege is limited to co-defendants, was in error.

As noted earlier, there is no doubt that Movant and Subsidiary were engaged in the joint prosecution of a claim against the Army, as well as in the joint defense of the Army's counterclaim. Although Subsidiary was not a named party, it was the real party in interest. Recovery would inure to it.

■ As for claim-related Group I documents, those created when Subsidiary was an unincorporated division of Movant, the government contends that those documents cannot be subject to a joint defense privilege because there existed no separate entity with which Movant was jointly interested. Although this argument possesses some facial validity, we believe it promotes form over substance. The rationale underlying the joint defense privilege focuses not on when documents were generated, but on the circumstances surrounding the disclosure of privileged documents to a jointly interested third party. Here, the disclosure of claim-related Group I documents to a third party occurred on the day Movant incorporated Subsidiary as a separate entity, and nothing in the record suggests that this disclosure was not for the purpose other than to allow Subsidiary to continue to participate in the ongoing litigation. Applying the joint defense rule to claim-related documents that were shared after incorporation of Subsidiary but not to claim-re-

---

** To this point the parties have assumed, as did the district court and as do we, that the documents here in issue are subject to an otherwise valid privilege. Because the normal rules governing the attorney-client privilege and the work product doctrine remain intact, on remand the district court can apply those rules on a document-by-document basis.

lated documents which Subsidiary already possessed would not only be illogical, but would defeat the purpose of the rule. Accordingly, we hold that all documents that relate to the prosecution of the claim against the Army or to the defense of the Army's counterclaim, and which are subject to the attorney-client or work-product privilege, are subject to a joint defense privilege that Subsidiary may not waive unilaterally.

The order of the district court appealed from is accordingly affirmed in part, vacated in part, and remanded with instructions.

Our mandate will issue forthwith.

