736 A.2d 350

**Paul B. GALLAGHER**

v.

**OFFICE OF the ATTORNEY GENERAL et al.**

**No. 1610, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Aug. 31, 1999.

Robert L. Lombardo (Knight, Manzi, Nussbaum & LaPlaca on the brief), Upper Marlboro, for appellant.

Steven M. Sullivan, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General on the brief), Baltimore, for appellees.

Argued before WENNER, KENNEY, and JOHN J. BISHOP (Retired, specially assigned), JJ.

KENNEY, Judge.

Appellant, Paul B. Gallagher, submitted a request for copies of letters contained in an investigatory file of appellee, the Securities Division of the Office of the Attorney General (the "State"). The State released 58 of the documents, but with-

held 82 on the ground that they were exempt under the Maryland Public Information Act (the "MPIA"), Maryland Code (1984, 1996 Repl.Vol., 1998 Cum.Supp.), §§ 10–611 through 10–628 of the State Government Article ("S.G"). On January 27, 1997, appellant filed a complaint in the Circuit Court for Baltimore City, seeking a writ of mandamus to compel disclosure of the 82 documents that had been withheld by the State. The complaint stated, in relevant part:

1. This action is brought under Md.Code Ann., State Gov't § 10–611 et seq., Maryland Public Information Act (the "Act") and Maryland Rule 15–701.

2. From on or about October 1, 1985 through June of 1986 Plaintiff Gallagher was the subject of an investigation by the Division of Securities in the Office of the Attorney General of Maryland.

3. Plaintiff Gallagher appeared and participated in an administrative hearing held on June 6 and 9, 1986.

4. Based on the Maryland Securities Commissioner's Investigation, the Plaintiff was indicted and convicted in the Commonwealth of Virginia, Roanoke County Circuit Court, for securities fraud and securities registration offenses.

5. Plaintiff Gallagher is currently serving a thirty-four year sentence in Virginia for his March 28, 1991 conviction. The Plaintiff's direct appeals of his conviction have been exhausted and he now intends to file a petition for a writ of habeas corpus.

6. In a letter dated November 15, 1996, Plaintiff Gallagher, through his attorney, requested from the Attorney General, pursuant to the Act, public documents that were generated as a result of the investigation of Plaintiff Gallagher by the Division of Securities. (Exhibit A).

7. On December 17, 1996, Maryland Assistant Attorney General T. Webster Brenner, on behalf of the Division of Securities, refused to make available to the Plaintiff certain documents because it was "required as a matter

of law or because access would be contrary to the public interest." (Exhibit B).

8. That Plaintiff Gallagher is a "person in interest" as defined in Md.Code Ann., State Gov't § 10–611(e)(1).

9. That the Defendants, the Office of the Attorney General and T. Webster Brenner, are "official custodians" as defined in Md.Code Ann., State Gov't § 10–611(d).

10. That the Defendants have a clear duty to grant the Plaintiff's request to review certain public documents concerning the investigation of the Plaintiff.

11. That Plaintiff Gallagher has a clear right to have access to the public documents that were generated over the course of the investigation of him by the Division of Securities in the Office of the Attorney General of Maryland.

The State filed a motion to dismiss, which appellant opposed. In its motion, the State acknowledged that, "The documents at issue are contained in the Maryland Securities Division's investigatory file relating to, among related parties, Caucus Distributors, a publishing and fund raising organization affiliated with Lyndon H. LaRouche, Jr."

On May 5, 1997, the court denied the motion to compel production of the documents, but ordered the State to submit a *Vaughn* index describing each document withheld.[1] On June 9, 1997, the State filed a *Vaughn* index, which was accompanied by a renewed motion to dismiss, or, in the alternative, motion for protective order. Appellant opposed these motions. After a hearing on June 20, 1997, the court ordered the State to submit a revised *Vaughn* index, which it did on July 28, 1997.

---

1. A "Vaughn index" requires a custodian of records "to present a sufficiently detailed description and explanation to enable the trial court to rule whether a given document, or portion thereof, is exempt without the necessity of an in camera inspection." *Cranford v. Montgomery County*, 300 Md. 759, 779, 481 A.2d 221 (1984)(citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974)).

Appellant filed an additional memorandum on August 11, 1997, and, on December 10, 1997, filed a summary of objections to the State's MPIA exemption claims. A hearing was held on December 12, 1997, and the court directed the State to submit the documents for an *in camera* review. Initially, only 51 of the documents were submitted to the court. On May 14, 1998, the court filed an order with regard to those 51 documents. As a preliminary matter, the court noted, "Since my reason in each case will mirror either the State's position or the plaintiff's argument, I will not repeat same in each instance." The court then made the following general observations:

1. I am satisfied that inter-agency communication includes agencies of other states and because of the implicit assurance of its non-privileged dissemination, the attorney privilege was not waived.

2. An inter-agency memorandum can be in a correspondence format.

3. I regard a communication about a non-public legal perspective, tactic or approach to be, in most instances, an investigative procedure.

4. It is obvious that the Attorney General of Maryland has been in communication with similar offices in other states. This is not a confidential fact. Nor is it unknown that such communication would include some sharing of status information. Such communication, unless they are regarding attorney legal procedures, strategy and impressions, are not protected from revelation.

5. When the context of a document conveys an attorney's reaction, question, idea, or impression regarding a legal procedure, it can be withheld pursuant to § 615. The nature of the transfer was considered also as to whether it was implicitly limiting its future disposition.

The court ordered the State to disclose 17 of the documents and authorized the withholding of 34 documents.

Thirty of the remaining 31 documents were subsequently submitted to the court. On June 10, 1998, the court issued a supplemental order, authorizing the State to withhold all 30 of those documents. On June 17, 1998, the court issued an order regarding the time for filing an appeal of its judgment. The order stated:

Upon the Consented Motion for Clarification of the parties to the above-referenced case, the Court hereby clarifies that its Order dated May 11, 1998, was in substance an interlocutory Order, and the Supplemental Order to be entered by this Court shall be the final Order for purposes of determining the time for filing a notice of appeal from both the May 11 Order and the Supplemental Order.

On July 9, 1998, appellant filed a notice of appeal to this Court. On August 29, 1998, the court issued a second supplemental order, acknowledging that it had reviewed the last document and ordering that it could be withheld by the State.

## DISCUSSION

### I.

In this case, inspection of public records is sought under the MPIA. The Court of Appeals has noted that " 'the provisions of the [MPIA] reflect the legislative intent that citizens of the State of Maryland be accorded wide-ranging access to public information concerning the operation of government.' " *Fioretti v. Maryland State Bd. of Dental Examiners,* 351 Md. 66, 716 A.2d 258 (1998)(quoting *A.S. Abell Pub. Co. v. Mezzanote,* 297 Md. 26, 32, 464 A.2d 1068 (1983)). The MPIA

declares that "[a]ll persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees." 10–612(a). "To carry out the [foregoing right], unless an unwarranted invasion of the privacy of a person in interest would result, *[the Act is to] be construed in favor of permitting inspection of a public record.*" 10–612(b). A " '[p]ublic record' means ... any documentary material" that is made or received "by a unit or instrumentality of the State government or of a

political subdivision ... in connection with the transaction of public business." 10–611(f)(1)(i); see Maryland Attorney General, Public Information Act Manual 4 (1987).

*Mayor and City Council of Baltimore v. Maryland Committee Against the Gun Ban,* 329 Md. 78, 80–81, 617 A.2d 1040 (1993)(emphasis added).

The question to be resolved when a government agency denies a citizen inspection of public records is whether the public records sought to be inspected "fall within any exclusion from the general rule of disclosure." *Id.* at 81, 617 A.2d 1040. The exclusions asserted by the State and applied by the trial court in this case are outlined in S.G. §§ 10–615, 617, 618. State Government § 10–615 requires custodians to deny inspection of a public record or any part of a public record if:

(1) by law, the public record is privileged or confidential; or

(2) the inspection would be contrary to:

(i) a State statute;

(ii) a federal statute or a regulation that is issued under the statute and has the force of law;

(iii) the rules adopted by the Court of Appeals; or

(iv) an order of a court of record.

State Government § 10–617 requires custodians to deny inspection of a part of a public record if the public record contains specified information, including certain medical, psychological, sociological, commercial and financial information.[2]

---

2. S.G.10–617 states, in relevant part:

(d) *Commercial information.*—A custodian shall deny inspection of the part of a public record that contains any of the following information provided by or obtained from any person or governmental unit:

(1) a trade secret;

(2) confidential commercial information;

(3) confidential financial information; or

(4) confidential geological or geophysical information.

. . . .

(f) *Financial Information.*—(1) This subsection does not apply to the salary of a public employee.

(2) Subject to paragraph (3) of this subsection, a custodian shall deny inspection of the part of the public record that contains

*Maryland Committee Against the Gun Ban,* 329 Md. at 81, 617 A.2d 1040.

State Government § 10–618 provides, in relevant part:

(a) *In general.*—unless otherwise provided by law, if a custodian believes that inspection of a part of a public record by the applicant would be contrary to the public interest, the custodian may deny inspection by the applicant of that part, as provided in this section.

(b) *Interagency and intra-agency documents.*—A custodian may deny inspection of any part of an interagency or intra-agency letter or memorandum that would not be available by law to a private party in litigation with the unit.

. . . .

(f) *Investigations.*—(1) Subject to paragraph (2) of this subsection, a custodian may deny inspection of:

(i) records of investigations conducted by the Attorney General, a State's Attorney, a city or county attorney, a police department, or a sheriff;

(ii) an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose; or

(iii) records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a city or county attorney, a police department, a State or local correctional facility, or a sheriff.

(2) A custodian may deny inspection by a person in interest only to the extent that the inspection would:

(i) interfere with a valid and proper law enforcement proceeding;

(ii) deprive another person of a right to a fair trial or an impartial adjudication;

---

information about the finances of an individual, including assets, income, liabilities, net worth, bank balances, financial history or activities, or creditworthiness.

(3) A custodian shall permit inspection by the person in interest.

(iii) constitute an unwarranted invasion of personal privacy;

(iv) disclose the identity of a confidential source;

(v) disclose an investigative technique or procedure;

(vi) prejudice an investigation; or

(vii) endanger the life or physical safety of an individual.

Appellant argues that because the documents requested to be inspected were part of an investigatory file, the trial court erred by authorizing the withholding of documents under any provision other than S.G. 10–618(f). We agree. In *Maryland Committee Against the Gun Ban, supra,* an action was filed under the MPIA seeking disclosure of records that were generated in the course of an investigation conducted by the Internal Investigation Division ("IID") of the Baltimore City Police Department. The circuit court held that the records were exempt from disclosure under S.G. § 10–618(a)(intra–agency memoranda) and S.G. § 10–618(f)(police department investigation). On the appeal that followed, this Court reversed the trial court, holding that neither of the aforementioned exemptions applied.

The Court of Appeals granted certiorari and reversed, holding that the Committee was not "a person in interest" under the statute.[3] In reaching that conclusion, the Court noted that under 10–618(f)(2), a custodian could deny inspection " 'by a person in interest' but 'only to the extent that the inspection would' produce one of the seven results enumerated in paragraph (f)(2)." *Id.* at 82, 617 A.2d 1040. The Court emphasized that the seven exemptions enumerated in paragraph(f)(2) "comprise the only justifications for withholding a police investigation report from a person in interest." *Id.; See also Fioretti, supra.*

---

**3.** A "person in interest" is "a person ... that is the subject of a public record or a designee of the person." 10–611(e)(1). *See Maryland Committee Against the Gun Ban,* 329 Md. at 92, 617 A.2d 1040 ("The Act's history covering reports of police investigations also makes clear that the 'person in interest' referred to in § 10–618(f)(2) is the person who is investigated.").

Throughout this case, the State has conceded that the documents requested are part of "an investigatory file" compiled by the Securities Division of the Office of the Attorney General, and that appellant is a "person in interest" as that term is defined in the Act. The duty of the custodian upon a request for records in these circumstances is unambiguous; disclosure is mandatory unless inspection of the file would give rise to one of the seven enumerated exemptions outlined in S.G. § 10–618(f)(2).

The State argues that such an interpretation "would effectively negate much of the remainder of the [MPIA]—even its mandatory nondisclosure provisions in S.G. §§ 10–615 and 10–616—whenever investigatory file materials covered by S.G. § 10–618(f) are requested by a person in interest." The State argues further that neither the MPIA nor its legislative history indicates that the General Assembly intended such a result. We do not agree. The nature of the enumerated exemptions effectively restricts the floodgate against wholesale disclosure of an investigatory file. As the Attorney General's Office has noted, " '[t]he number and wide scope of these factors will often lead to a denial of disclosure by the law enforcement agency, especially where records have been recently obtained and are in active use in investigations.' " 81 Op. Att'y Gen. —— (1996)[Opinion No. 96–003 (January 31, 1996) ].

In *Maryland Committee Against the Gun Ban,* the Court of Appeals noted specifically that the legislature adopted S.G. § 10–618(f)(2) to protect the interests of the person subject to an investigation conducted by public authorities. The Court stated:

The Act's history covering reports of police investigations also makes clear that the "person in interest" referred to in § 10–618(f)(2) is the person who is investigated. As originally enacted by Chapter 698 of the Acts of 1970, the Act became codified in Md.Code (1957, 1975 Repl.Vol.), Art. 76A. Section 3(b)(i) of former Art. 76A addressed records of investigations conducted by a police department, but it did not contain any special provisions concerning inspection by

a person in interest. "Person in interest" was, however, a definitional term in the original Act, Md.Code (1957, 1975 Repl.Vol.), Art. 76A, § 1(h), that was employed in other exceptions to the general rule of disclosure. What is today paragraph (2) of § 10–618(f) came into the Act by Chapter 1006 of the Acts of 1978.

During 1974, metropolitan Baltimore daily newspapers published articles describing surveillance activities and the maintenance of dossiers by the Baltimore City Police Department concerning persons who were politically active in the community. In January of the 1975 General Assembly session, the late Senator Verda Welcome of Baltimore City obtained adoption of Senate Resolution No. 1, calling for a legislative investigation into intelligence surveillance by police throughout the State. The Senate Constitutional and Public Law Committee (the Senate Committee) was designated to investigate. It reported December 31, 1975. *See Report to the Senate of Maryland, Senate Investigating Committee Established Pursuant to Senate Resolutions 1 and 151 of the 1975 Maryland General Assembly* (1975) (the Senate Committee Report).

The Senate Committee found, *inter alia,* that

"the privacy of citizens is directly affected by the collection, maintenance, use and dissemination of personal information especially when one considers that information gathered by intelligence agencies as well as other governmental departments is widely disseminated to local, state and federal agencies. The opportunity for an individual to secure employment ... may well be endangered by the dissemination of improper or erroneous personal information." Senate Committee Report at 73.

Concluding that it was "an impossible task to define areas of legitimate police concern for surveillance and information-gathering practices without adversely affecting proper law enforcement activities," the Senate Committee "deemed it both necessary and preferable to provide for some type of outside vigilance wherein citizens are afforded the right to view those materials in the possession of law enforcement

agencies *respecting them personally."* *Id.* (emphasis added). As a result, the Senate Committee recommended, *inter alia*, that the then Act be amended to provide "that a 'person [in] interest' as defined in the statute may be denied the right to inspect records referred to in subsection (b)(i) thereof only to the extent that the production of such records would hamper or jeopardize valid law enforcement activities as particularly defined." *Id.* at 74.

That recommendation was incorporated into Chapter 1006 of the Acts of 1978. It added to former Art. 76A, § 3(b)(i), the proviso that "the right of a person in interest to inspect the records may be denied only to the extent that the production of them would" generate one of the circumstances currently enumerated in subparagraphs (i) through (vii) of § 10–618(f)(2). *See* Acts 1978, ch. 1006. Consequently, there was no legislative purpose in the addition of present paragraph (2) of § 10–618(f) to enlarge the class of those who could exercise the right of inspection beyond those who were the subjects of the particular police investigation.

The administrative interpretation of the Act by the Maryland State Police concerning records of investigations conducted by its Internal Affairs Unit is also consistent with the interpretation of § 10–618(f) which we have set forth above. Distinction is made between *"Access Rights of the Person in Interest"* and *"Disclosure of Records to Third Parties."* *See Final Report, Governor's Information Practices Commission* 308 (1982). As to the former, "the accused officer has access to virtually all of the Internal Affairs Records pertaining to him as a consequence of the [LEOBR]," while as to the latter, "Internal Affairs Records are not released to third parties without the consent of the officer in question." *Id.*

■ Because appellant was a person in interest with regard to the investigation, denial of inspection of the public documents requested had to be based on the factors enumerated in S.G. § 10–618(f)(2). Thus, to the extent the trial court denied inspection on other grounds, its ruling was in error.

## II.

### Disposition

#### A.

#### Documents found exempt in the initial order

In its initial order, the court held that inspection of 29 documents "would disclose an investigative technique or procedure," and were exempt from inspection based on S.G. § 10–618(f)(2)(v). The court determined that five of the documents reviewed *in camera* were "intra-agency letter or memorandum that would not be available by law to a private party in litigation" and were exempt from inspection based on S.G. § 10–618(b). Two of the five documents were deemed protected by § 10–615 and two were documents deemed covered only by § 10–615. As this was an investigatory file, the only applicable exemptions to disclosure were those enunciated in S.G. § 10–618(f)(2). We will remand to the trial court for its determination whether these documents were exempt from inspection based on S.G. § 10–618(b). If not, the documents must be released to appellant.

The trial court determined that 29 documents were exempt from inspection under S.G. § 10–618(f)(2). Appellant argues that this determination was erroneous. Specifically, appellant argues that the trial court erred by concluding generally based on the evidence that "a communication about a non-public legal perspective, tactic or approach to be, in most instances, an investigative procedure."

■ No Maryland court has clearly enunciated the standard of review applicable to this case. In *Fioretti,* however, the Court of Appeals noted that the purpose of the MPIA is "virtually identical" to that of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and that interpretations of the federal statute are ordinarily persuasive. *Id.* at 76, 716 A.2d 258. Accordingly, we shall apply the standard of review applied by federal courts to appeals involving claims under the FOIA, which is (1) whether the trial court had an adequate factual basis for the decision rendered and (2) whether upon

this basis the decision reached was clearly erroneous. *Bowers v. U.S. Dept. of Justice,* 930 F.2d 350, 353 (4th Cir.1991), *cert. denied,* 502 U.S. 911, 112 S.Ct. 308, 116 L.Ed.2d 250 (1991)(denoting standard for reviewing claims under the Freedom of Information Act); *Spannaus v. U.S. Dept. of Justice,* 813 F.2d 1285, 1288 (4th Cir.1987). Pure legal errors, however, are reviewed *de novo. Id.*

▇ Because the circuit court conducted an *in camera* review of the documents, appellant cannot seriously contest the factual basis for the court's conclusions. *Fioretti, supra* (noting that *in camera* inspection of investigatory files would have provided a sufficient basis for concluding that the information sought was exempt from disclosure under the MPIA); *Cranford,* 300 Md. at 780–81, 481 A.2d 221 (analyzing a claim brought under the MPIA and noting that an appellate court does not encroach on the trial court's domain as a fact finder); *See also City of Virginia Beach v. U.S. Dept. of Commerce,* 995 F.2d 1247, 1252 n. 12 (4th Cir.1993)(citing *Bowers,* 930 F.2d at 353)("By conducting in camera review, the [circuit] court established an adequate factual basis for its decision."). Moreover, based upon our own in camera review, we cannot conclude that the trial court's decision to deny inspection of these documents was clearly erroneous with the exception of the documents described in the trial court's opinion as Revised Vaughn Index Nos. 6, 8, 13, and 19. Accordingly, with regard the other documents withheld pursuant to S.G. § 10–618(f)(2), the circuit court's judgment shall be affirmed.

## B.

### Documents found exempt in supplemental order

In its supplemental order, the court concluded that 30 documents were exempt from inspection based on S.G. § 10–618. The court found that ten of those 30 documents could also be withheld under S.G. § 10–615 and fifteen of those 30 documents could also be withheld under S.G. § 10–617. As we have already indicated, because the documents were part of an

investigatory file the factors listed in S.G. § 10–618(f)(2) constitute the only basis for denying inspection of the documents.

In its supplemental order, the trial court did not specify the paragraph of S.G. § 10–618 upon which the denial of inspection was based. Because the court adopted the justification asserted by the State in the *Vaughn* index and because the justification put forth in the *Vaughn* index does not enunciate the specific section upon which inspection was denied, we shall remand this case so the court can clarify its order. We reiterate, however, that under the circumstances, inspection of the documents can be denied only if authorized by the factors listed in S.G. § 10–618(f)(2). Documents not exempt under S.G. § 10–618(f)(2) must be released to appellant.

## C.

### Document found exempt under
### second supplemental order

The one document addressed by the court in its second supplemental order was withheld pursuant to S.G. §§ 10–615, 10–618(b) and 10–618(f)(2)(v). We hold that the court had a sufficient factual basis for concluding that this document was subject to exclusion under S.G. § 10–618(f)(2) and that the decision to exclude this document was not clearly erroneous. Accordingly, we shall affirm the judgment rendered in the second supplemental order.

## III.

### Interagency Communication

Appellant's final argument is that the trial court erred when it made the general observation that it "was satisfied that inter-agency communication includes agencies of other states and because of the implicit assurance of its non-privileged dissemination, the attorney privilege was not waived." Appellant concedes that it is unnecessary to address this issue if we accept his position that the trial court erred by considering

exceptions outside of S.G. § 10–618(f)(2). Therefore, because we have accepted that position, we shall not address this issue.

**JUDGMENT AFFIRMED IN PART; REVERSED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE SPLIT EQUALLY BETWEEN THE PARTIES.**