787 A.2d 777

**Paul B. GALLAGHER**

v.

**OFFICE OF the ATTORNEY GENERAL et al.**

**No. 1610, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Dec. 28, 2001.

Robert L. Lombardo (Knight, Manzi, Nussbaum & LaPlaca, on the brief), Upper Marlboro, for appellant.

Steven M. Sullivan, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellees.

Argued before WENNER,* KENNEY, and JOHN J. BISHOP (Ret'd, specially assigned), JJ.

KENNEY, Judge.

This case is before this Court on remand from the Court of Appeals. The procedural and factual history of the case is summarized as follows:

Appellant, Paul B. Gallagher, is presently serving a thirty-four year sentence of imprisonment in the Commonwealth of Virginia for securities fraud and security registration offenses. His conviction was based, in part, on an investigation conducted by appellee, the Securities Division of the State of Maryland Office of the Attorney General (the "State"). He has exhausted his direct appeals and is planning to file a writ of habeas corpus in Virginia. Anticipating that records compiled during the investigation conducted by the State would "be useful to [his] petition," appellant submitted a request for copies of letters contained in the State's investigatory file. The State released 58 of the requested documents, but withheld 82, claiming that they were exempt under the Maryland Public Information Act (the "MPIA"), Maryland Code (1984, 1996 Repl. Vol., 1998 Cum. Supp.), §§ 10–611 through 10–628 of the State Government Article ("S.G.").

On January 27, 1997, appellant filed a complaint in the Circuit Court for Baltimore City, seeking a writ of mandamus to compel disclosure of the 82 documents that had been withheld by the State. On May 5, 1997, the court denied the motion to compel production of the documents, but ordered the State to submit a *Vaughn* index describing each document withheld.[1] On June 9, 1997, the State filed a *Vaughn* index.

---

\* Wenner, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

1. A *"Vaughn* index" requires a custodian of records "to present a sufficiently detailed description and explanation to enable the trial court to rule whether a given document, or portion thereof, is exempt without the necessity of an in camera inspection." *Cranford v. Montgomery County,* 300 Md. 759, 779, 481 A.2d 221 (1984)(citing *Vaughn v.*

After a hearing on June 20, 1997, the court ordered the State to submit a revised *Vaughn* index, which it did on July 28, 1997.

Appellant filed a summary of objections to the State's MPIA exemption claims. After a hearing on December 12, 1997, the court directed the State to submit the documents for an *in camera* review. Only 51 of the 82 documents in question were submitted to the court. On May 14, 1998, the court filed an order with regard to those 51 documents. As a preliminary matter, the court noted: "Since my reason in each case will mirror either the State's position or the plaintiff's argument, I will not repeat same in each instance." The court then made the following general observations:

1. I am satisfied that inter-agency communication includes agencies of other states and because of the implicit assurance of its non-privileged dissemination, the attorney privilege was not waived.

2. An inter-agency memorandum can be in a correspondence format.

3. I regard a communication about a non-public legal perspective, tactic or approach to be, in most instances, an investigative procedure.

4. It is obvious that the Attorney General of Maryland has been in communication with similar offices in other states. This is not a confidential fact. Nor is it unknown that such communication would include some sharing of status information. Such communications, unless they are regarding attorney legal procedures, strategy and impressions, are not protected from revelation.

5. When the context of a document conveys an attorney's reaction, question, idea, or impression regarding a legal procedure, it can be withheld pursuant to § 615. The

*Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974)).

nature of the transfer was considered also as to whether it was implicitly limiting its future disposition.

The court issued an order outlining each item requested and directed the State to disclose a total of 17 of the documents and authorized the withholding of 34 documents.

Thirty of the remaining 31 documents were subsequently submitted to the court. On June 10, 1998, the court issued a supplemental order, authorizing the State to withhold all 30 of those documents. The court subsequently issued an order directing that the order of June 10, 1998, be regarded as the final order for purposes of appeal. On July 9, 1998, appellant filed a Notice of Appeal to this Court. On August 29, 1998, the court issued a second supplemental order, acknowledging that it had reviewed the last document and ordering that it be withheld by the State.

In an opinion dated August 31, 1999, this Court held that because all the records at issue were part of an investigatory file and because appellant was a "person in interest" as defined by the Public Information Act, the only exemption applicable to the documents was § 10–618(f)(2). *See Gallagher v. Office of Attorney General,* 127 Md.App. 572, 736 A.2d 350 (1999). We affirmed the trial court's judgment insofar as it had applied § 10–618(f)(2) to authorize the non-disclosure of certain documents, but reversed the trial court as it had denied inspection based on other exemptions under the Act. We remanded the case to the trial court with directions to reevaluate documents that had been withheld pursuant to § 10–615, 10–617, and 10–618(b), and to determine whether § 10–618(f)(2) authorized their non-disclosure.

The Court of Appeals granted certiorari and reversed, holding that "nothing in the language or history of the Public Information Act supports the view that, when the records are contained within an investigatory file, § 10–618(f)(2) displaces all other exemptions in the statute." It concluded:

[A]s the language and legislative history of the Public Information Act makes clear, if any exemption under §§ 10–615, 10–616, or 10–617 is applicable to a particular record,

then it must be withheld. Moreover, if the record is exempt under the provisions of § 10–618, including § 10–618(f)(2), then it may be withheld at the discretion of the custodian. *Office of the Attorney General v. Gallagher,* 359 Md. 341, 753 A.2d 1036 (2000). Section 10–615 permits denial of inspection of the public record if:

(1) by law, the public record is privileged or confidential; or

(2) the inspection would be contrary to:

(i) a State statute;

(ii) a federal statute or a regulation that is issued under the statute and has the force of law;

(iii) the rules adopted by the Court of Appeals; or

(iv) an order of a court of record.

Section 10–616 generally denies inspection of certain specific records including, but not limited to, adoption records, retirement records, and hospital records. No denial was based on § 10–616.

Section 10–617 generally denies inspection of a part of public record that contains specific information including, but not limited to, medical and psychological information, commercial information, and licensing information. Several documents were withheld based, in part, on § 10–617 with reference once to § 10–617(d), which provides:

(d) *Commercial information.*—A custodian shall deny inspection of the part of a public record that contains any of the following information provided by or obtained from any person or governmental unit:

(1) a trade secret;

(2) confidential commercial information

(3) confidential financial information; or

(4) confidential geological or geophysical information.

Section 10–618 relates to "permissible denials." At issue in this case are § 10–618(b) and (f), which provide:

(b) *Interagency and intra-agency documents.*—A custodian may deny inspection of any part of an interagency or intra-

agency letter or memorandum that would not be available by law to a private party in litigation with the unit.

(f) *Investigations.*—(1) Subject to paragraph (2) of this subsection, a custodian may deny inspection of:

(i) records of investigations conducted by the Attorney General, a State's Attorney, city or county attorney a police department, or a sheriff;

(ii) an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose; or

(iii)records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a city or county attorney, a police department, a State or local correctional facility, or a sheriff.

(2) A custodian may deny inspection by a person in interest only to the extent that the inspection would:

(i) interfere with a valid and proper law enforcement proceeding;

(ii) deprive another person of a right to a fair trial or an impartial adjudication;

(iii) constitute an unwarranted invasion of personal privacy;

(iv) disclose the identity of a confidential source.

(v)disclose an investigative technique or procedure;

(vi) prejudice an investigation; or

(vii) endanger the life or physical safety of an individual.

The Court of Appeals remanded the case to this Court "to decide issues raised by the parties but not addressed by the Court of Special Appeals." *Id.* To that end, we find it useful to set out our prior findings and the issues raised by appellant.

In his appeal, appellant made three allegations of error. First, he asserted that the trial court erred "when it considered exemption claims other than § 10–618(f)(2)." In this Court's prior opinion, we found in favor of appellant on this issue and reversed, in part, the trial court's ruling. The Court of Appeals reversed this aspect of our ruling but, to the extent

that we found that the trial court was not clearly erroneous in withholding certain documents based on § 10–618(f)(2), that ruling still stands.

■ The second issue raised by appellant in his appeal was that "the lower court erred when it found that a communication about a non-public legal perspective, tactic or approach may be an investigative procedure under § 10–618(f)(2)(v)." Appellant cites federal case law, asserting that § 10–618(f)(2)(v) was intended to extend to "information regarding obscure or secret techniques" and that it was not intended to encompass "ordinary manuals or procedures unless they include confidential details of law enforcement programs." *See Docal v. Bennsinger*, 543 F.Supp. 38, 48 (M.D.Pa.1981); *Jaffe v. C.I.A.*, 573 F.Supp. 377, 387 (D.D.C.1983).

While we agree that federal case law states that the "investigative techniques and procedures" language of FOIA Exemption 7(e), 5 U.S.C. § 552(b)(7)(E), is not designed to exclude what is "already well known to the public," we find that the trial court properly interpreted the corresponding Maryland provision as it applied to this case. In its memoranda, the trial court stated that it regarded a communication about a *"nonpublic* legal perspective, tactic or approach" constituted *"in most instances,* an investigative procedure." (Emphasis added.) The trial court's qualification of "nonpublic" and "in most instances" indicates its recognition that certain information, i.e., that which is commonly known to the public, would not be protected. Its detailed findings outlining each document individually make it clear that the trial court examined each document to determine whether it constituted a "non public" investigative technique or procedure, and whether it should be withheld. Having reviewed those documents, we find no error on the part of the trial court.

Appellant's third challenge is to the trial court's finding that "inter-agency communication includes agencies of other states and because of the implicit assurance of its non-privileged dissemination the attorney privilege was not waived." Again, we find no error.

The case of *Cranford v. Montgomery County*, 300 Md. 759, 481 A.2d 221 (1984), outlines three elements that must be satisfied under the § 618(b) exemption to deny the right of inspection.

The Custodian may deny the right of inspection to

1. interagency or intra-agency memorandums or letters
2. which would not be available by law to a private party in litigation with the agency
3. if disclosure to the applicant would be contrary to the public interest.

*Cranford,* 300 Md. at 771, 481 A.2d 221. The *Cranford* Court expressly recognized the applicability of the attorney work product privilege under § 618(b). The *Cranford* Court stated: "Cases decided under FOIA (b)(5) indicate that the agency memoranda exemption embraces various privileges.... By analogy to FOIA, [MPIA § 618(b)] also includes the attorney work product privilege." *Id.* at 772–773, 481 A.2d 221. The Court also cited *F.T.C. v. Grolier, Inc.,* 462 U.S. 19, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983), for the proposition that the privilege continues after litigation ends. The Court reasoned that because attorney work product materials are discoverable under Md. Rule 2–401(c) only upon a showing of substantial need, it would not be "routinely" discoverable and thus "not available by law to a party in litigation with the agency."

■ Further, the *Cranford* Court opined that when a trial court has determined that such a privilege applies, "the third element of [§ 618(b)] will typically be satisfied, namely, disclosure to the applicant would be contrary to the public interest." *Cranford,* 300 Md. at 776, 481 A.2d 221. It reasoned that "[t]here is a public interest which underlies each legally recognized privilege and, if the privilege applies, it would be at best difficult to say that an agency decision to withhold was contrary to the public interest." *Cranford,* 300 Md. at 776, 481 A.2d 221. Thus, we disagree with appellant's assertions that the attorney work privilege is not embodied in the § 618(b) exemptions, or that the disclosure of such documents would not be contrary to the public's interest.

Appellant asserts that the "appellees have never raised any of the privileges that are recognized in Maryland and set forth in Md. Cts & Jud. Proc.Code Ann. §§ 9–108 to 9–112(1998)." As we stated above, the *Cranford* Court expressly stated that the attorney work product privilege is embodied within the § 618(b) exemptions. Thus, the applicable privileges are not limited, as appellant contends, to those exceptions enunciated in Md. Code (1974, 1998 Repl. Vol.), §§ 9–108 to 9–112 of the Courts & Judicial Proceedings Article.

 It is apparent from the record that the appellee asserted the attorney work product privilege from the onset. In a letter dated October 30, 1990, the Attorney General asserted that numerous documents requested were withheld based on the attorney work product privilege. Again, this privilege was asserted in a letter dated December 17, 1996, from the Attorney General's office to Mr. Rosenfield, which provided:

The balance of the file, 50 pieces of correspondence, are withheld from access or production. These documents, interagency memoranda which are part of the Division's investigative file, involve the exchange of information and legal theories sought as part of the development of the case and are privileged as attorney work product reflecting the legal theories and mental impressions of the Division attorneys; they are protected from disclosure under S.G. 10–615(1) and 618(b).

 Appellant asserts that the documents are not interagency memoranda because they are communications between Maryland Assistant Attorney General McCafferty and various officials of governmental organizations in other states and the federal government, but we are not persuaded. In *Cranford,* the Court of Appeals held that a report compiled by an independent consultant, who is neither an "agency" nor an employee of a governmental agency, may still enjoy the attorney work product protection under § 618(b). It reasoned that until it has been determined that the agency intends to call the independent consultant as an expert witness at trial, any report made by the consultant would be protected from dis-

covery under the attorney work product privilege and therefore would also enjoy protection from disclosure under MPIA § 618(b). *See Cranford*, 300 Md. at 783–84, 481 A.2d 221. Similarly, in *Ryan v. Dept. of Justice*, 617 F.2d 781, 790 (D.C.Cir.1980), the District of Columbia Court of Appeals addressed the issue of whether documents that were submitted to the Department of Justice by United States Senators "who are not agencies within the meaning of the FOIA," could be termed "interagency" or "intra-agency" memoranda under the analogous federal provision. The Court reasoned:

When interpreted in light of its purpose, however, the language of [FOIA] Exemption 5 clearly embraces this situation. The exemption was created to protect the deliberative process of the government, by ensuring that persons in an advisory role would be able to express their opinions freely to agency decision-makers without fear of publicity. In the course of its day to day activities, an agency often needs to rely on the opinions and recommendations of temporary consultants, as well as its own employees. Such consultants are an integral part of its deliberative process; to conduct this process in public view would inhibit frank discussion of policy matters and likely impair the quality of decisions.

\* \* \*

Unquestionably, efficient government operation requires open discussions among all government policy-makers and advisors, whether those giving advice are officially part of the agency or are solicited to give advice only for specific projects. Congress apparently did not intend "interagency" and "intra-agency" to be rigidly exclusive terms, but rather to include any agency document that is part of the deliberative process. ... When an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency, we find it entirely reasonable to deem the resulting document to be an "intra-agency" memorandum for purposes of determining the applicability of exemption 5. This common sense interpretation of "intra-agency" to accommodate the realities of the typical agency

deliberative process has been consistently followed by the courts.

*Ryan,* 617 F.2d at 790–91. *See also Office of the Governor v. Washington Post Company,* 360 Md. 520, 552, 759 A.2d 249 (2000) (citation omitted), where the Court of Appeals found that telephone bills and the governor's scheduling records did not constitute "inter-agency or intra-agency letter or memoranda," stating that "courts have held that the exemption is limited to documents created by government agencies or agents, or by outside consultants called upon by a government agency 'to assist it in internal decision making.' "

■ Applying this reasoning to the present case, we conclude that memoranda submitted by agencies of other states, as well as federal organizations as part of the deliberation process, may qualify as "interagency or intra-agency" memoranda under § 618(b). To adopt appellant's argument and hold that communications between the Maryland Attorney General's Office and various officials of other states and federal organizations engaged in similar investigations and litigation do not constitute memoranda exempted from disclosure under § 618(b) would unnecessarily impede Maryland's ability to participate in multi-state investigations and litigation.

■ Appellant next asserts that Ms. McCafferty "waived the [attorney work product] privilege by sharing her thoughts and work product without ensuring its non-dissemination by the recipients." Citing *In re Doe,* 662 F.2d 1073, 1081 (4th Cir.Md.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982), appellant contends that "nothing on the face of those documents" indicates McCafferty sought to limit the dissemination of those documents, and, therefore, he reasons that the appellee waived its right to claim the attorney work product privilege. We are not persuaded.

■ It is uniformly held that under the common interest rule, parties with shared interests in actual or pending litigation against a common adversary may share privileged information without waiving their right to assert the privilege.

The rule has its roots in the joint defense privilege pertaining to criminal defendants, and is designed to facilitate the "free flow of information from client to attorney" and to aid in the development of joint strategies. *In re Grand Jury Subpoenas, 89–3 & 89–4, John Doe 89–129 (Under Seal),* 902 F.2d 244, 248–9 (4th Cir.Va.1990). " 'So long as the transferor and transferee anticipate litigation against a common adversary on the same or similar issues, they have a strong common interest in sharing the fruit of the trial preparation efforts.' " *In re United Mine Workers Employee Benefit Plans Litig.,* 159 F.R.D. 307 (D.D.C.1994)(quoting *United States v. American Tel. & Tel. Co.,* 206 U.S.App.D.C. 317, 642 F.2d 1285, 1298–1300 (1980)). *See also In re Santa Fe Int'l Corp.* (No. 01–40421), 272 F.3d 705, 2001 U.S.App. Lexis 24053 (5thCir.Tex.2001). While we agree that "release of otherwise protected material without an intent to limit its future disposition might forfeit work product production" under *Doe,* at 1081, whether a waiver has occurred depends on the "circumstances surrounding the disclosure of privileged documents to a jointly interested third party." *Grand Jury,* 902 F.2d at 249. The common interest rule focuses on "the relationship between the transferor and the tranferee at the time that the confidential information is disclosed." *United Mine Workers,* 159 F.R.D. 307, 314. The divergence of the parties' interests "over the course of litigation does not necessarily negate the applicability of the common interest rule." *United Mine Workers,* 159 F.R.D. 307, 314 (D.D.C.1994). Nor does the rule require a guarantee of confidentiality on the part of the transferee. *United Mine Workers,* 159 F.R.D. at 315, n. 6.

A close reading of the trial court's opinion reveals that the trial court properly interpreted the common interest rule and applied it to the circumstances of the case. In its findings of May 14, 1998, the trial court recognized that the Attorney General's Office shared information, including status information, with other states and that such shared communications are not generally protected from revelation. The court further recognized, however, that, when the communication conveyed "an attorney's reaction, question, idea, or impression

regarding a legal procedure," it could be withheld. The trial court also stated that "the nature of the transfer was considered as to whether it was implicitly limiting its future disposition." Based on "implicit assurance of confidentiality," the trial court believed that McCafferty did not intend to waive the attorney work product privilege when she shared information with agencies of other states. The fact that other jurisdictions, did, in fact, subsequently disclose these documents has no bearing on whether McCafferty intended to waive the privilege.

In light of our holdings above, we discern no error in the trial court's recognition and application of the appropriate legal principles to its review of the documents. This limits our review to (1) whether the trial court had an "adequate factual basis for the decision rendered" and (2) "whether upon this basis the decision reached was clearly erroneous." *See Gallagher v. Office of the Attorney General,* 127 Md.App. 572, 736 A.2d 350 (1999). Here, the trial court conducted an *in camara* review of each document and therefore had an adequate factual basis to make its determinations. As for the remaining documents, with the exception of one, we hold that the justifications are adequate to withhold the documents. Although we may not have made the same factual determinations, we cannot say that the trial court was clearly erroneous. As to document number 20 of the Revised *Vaughn* Index, we conclude that the second paragraph should be redacted and this document made available to appellant.

**JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID THREE FOURTHS BY APPELLANT AND ONE FOURTH BY APPELLEE.**