Albert L. ODMARK, Jr. on behalf of himself and all other persons similarly situated, Plaintiff,

v.

WESTSIDE BANCORPORATION, INC., Westside Federal Savings & Loan, et al., Defendants.

Robert WOODBRIDGE, individually and on behalf of others similarly situated, Plaintiff,

v.

WESTSIDE BANCORPORATION, INC., et al., Defendants.

No. C85–1099R.

United States District Court, W.D. Washington.

Feb. 26, 1986.

---

Donald J. Horowitz, David W. Soukup, Levinson, Friedman, Vhugen, Duggan, Bland & Horowitz, Seattle, Wash., Jeffrey H. Squire, I. Stephen Rabin, Wolf, Pepper, Ross, Wolf & Jones, New York City, for plaintiff.

T. Dennis George, George, Hull & Porter, Seattle, Wash., for Robert King.

Ronald M. Gould, Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash., for Westside (FSLIC).

Evan L. Schwab, Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for Leckenby.

Richard M. Clinton, Guy P. Michelson, Bogle & Gates, Seattle, Wash., for Prater, Smith, Jensen, Hogan & Little.

Katherine Hendricks, Hendricks & Lewis, Seattle, Wash., for Abels.

William Helsell, Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, Wash., for Dennis & Comfort.

Marco J. Magnano, Jr., Foster, Pepper & Riviera, Seattle, Wash., for Woodruff.

## ORDER RE
## ATTORNEY–CLIENT PRIVILEGE

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on a motion by defendant Federal Savings & Loan Insurance Corporation as receiver for defendant Westside Federal Savings and Loan Association for determination of attorney-client privilege. Having considered the memoranda, affidavits and exhibits submitted in support of and in opposition to the motion, together with the records and files herein, the court finds and rules as follows:

## I. FACTUAL BACKGROUND

The Federal Savings & Loan Insurance Corporation (hereinafter "FSLIC") was appointed receiver for Westside Federal Savings and Loan Association (hereinafter "Westside") when Westside was declared insolvent on August 30, 1985. As receiver, FSLIC was empowered to carry on the business of, and to collect all obligations owed to Westside, and to resolve all claims which could be asserted for or against Westside. *See* subchapter IV—Insurance of Savings and Loan Accounts. 12 U.S.C. § 1724 *et seq.*, 1729(d).

The law firm of Ferguson & Burdell (hereinafter "Firm") represented Westside from September, 1985 to September, 1986. Attorneys from that firm attended Westside board meetings and provided legal advice to the Bank through its officers and directors. *See* affidavit of E.P. Swain, Jr. (hereinafter "Swain") ¶ 3. The Firm also provided legal advice to Westside's directors collectively regarding their personal duties, responsibilities, and potential exposure to liability as officers and directors in connection with decisions to be made at Board meetings and certain threatened claims. This legal advice was in addition to advice concerning the duties, responsibilities, and potential exposure of the Bank itself. Swain ¶ 4. Fees related to services for Westside and its directors were billed to and paid by Westside. At no time did any individual officer or director request that any advice given by the Firm be kept confidential from Westside. See Supplemental affidavit of E.P. Swain, Jr. (hereinafter "Swain, supp.") ¶¶ 4, 5.

In June of 1985, complaints were filed by plaintiffs Homer H. and Vivian Baer, individually and on behalf of others similarly situated, against Westside, the holding company for Westside stock, and various directors and officers of Westside based on alleged violations of federal securities laws and other federal and state laws. On August 30, 1985, Westside was declared insolvent and placed in receivership. In September of 1985, FSLIC was substituted as defendant for Westside.

In order to defend the assets of the receivership against legal claims and to investigate the receiver's potential causes of action, FSLIC seeks to interview members of the Firm. FSLIC also wishes to review all records and files that were compiled by the Firm in the course of its representation of Westside. Various of the officers and directors oppose FSLIC's proposed inquiries based on their claim that an individual attorney-client privilege exists between the Firm and the officers and directors of Westside. They argue that FSLIC should not be allowed to interview the Firm regarding communications and legal advice about their individual or collective exposure to threatened claims. FSLIC, therefore, asks the court to determine that it is the exclusive holder of the attorney-client privilege between Westside and the Firm, and that the individual officers and directors of Westside do not have an individual attorney-client relationship with the Firm.

## II. LEGAL REASONING

It is undisputed that, as receiver, FSLIC succeeds to all the rights, titles, powers and privileges of Westside, and to the rights, powers, and privileges of its members, officers and directors. 12 C.F.R. § 547.7. Thus, the parties agree that FSLIC succeeds to the corporate attorney-client privilege which existed between Westside and the Firm. *Citibank, N.A. v. Andros*, 666 F.2d 1192, 1195 (8th Cir.1981). However, several of the officers and directors claim that they established separate, individual attorney-client relationships with the Firm, which permits them to invoke an attorney-client privilege.

█ Because the instant case is predicated on federal law, embodying federal policies, enforcement of those policies demands that the federal courts apply their own rule of privilege where substantial state interests are not infringed. *Garner v. Wolfenbarger*, 430 F.2d 1093, 1098 (5th Cir.1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971). *See* Fed.Rule Evid. 501. The scope of the privilege is determined by federal law. *United States v.*

*Hodge and Zweig,* 548 F.2d 1347, 1353 (9th Cir.1977).

The attorney-client privilege is considered essential to the proper operation of the legal system: "[t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). "It thereby encourages observance of the law and aids in the administration of justice." *Commodity Futures Trading Commission v. Weintraub,* —— U.S. ——, 105 S.Ct. 1986, 1991, 85 L.Ed.2d 372 (1985).

However, the courts have also recognized that exercise of the privilege can present an obstacle to investigation of the truth. Thus, courts have strictly confined the privilege within the narrowest possible limits consistent with its purpose. *See* 8 Wigmore, Evidence § 2291 (McNaughton Rev.1961). *Garner,* 430 F.2d at 1100–01; *Radiant Burners, Inc. v. American Gas Association,* 320 F.2d 314, 323 (7th Cir.), *cert. denied,* 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963).

When the client is a corporation acting through its agents, problems arise concerning who can properly invoke the protection of the attorney-client privilege. Several courts have concluded that when a corporate agent, acting in his or her official capacity, consults counsel, the privilege belongs to the corporation and not to the individual officer. *See Citibank,* 666 F.2d at 1195; *In re Grand Jury Proceedings,* 570 F.2d 562 (6th Cir.1978); *United States v. Piccini,* 412 F.2d 591, 593 (2nd Cir.1969), *cert. denied,* 397 U.S. 917, 90 S.Ct. 923, 25 L.Ed.2d 98 (1970).

■ Further, the Supreme Court has held that when control of the attorney-client privilege passes to the trustee in bankruptcy, the displaced managers of the corporation may not assert the privilege over the wishes of the trustee, who functions as the current manager, even as to statements the former might have made to counsel concerning matters within the scope of their corporate duties. *Weintraub,* 105 S.Ct. at 1993. *See Piccini,* 412 F.2d at 593; *United States v. Bartlett,* 449 F.2d 700, 703 (8th Cir.1971), *cert. denied,* 405 U.S. 932, 92 S.Ct. 990, 30 L.Ed.2d 808 (1972). *See also In re Boileau,* 736 F.2d 503 (9th Cir.1984) (bankruptcy examiner, functioning as manager of a corporation, had power to waive the attorney-client privilege over the objections of the debtor in possession). In general, therefore, the corporate privilege is controlled by the trustee, not by former officers and directors. Because FSLIC functions as a manger/trustee of Westside under the statute, *see* 12 U.S.C. § 1729(b), (d), the holdings in these cases are applicable.

The directors argue that under some circumstances, a joint attorney-client privilege may be created. *See Eureka Investment Corporation, N.V. v. Chicago Title Insurance Co.,* 743 F.2d 932, 936 (D.C.Cir.1984) (Firm represented parties jointly with respect to defense of tenant action but represented Eureka individually with respect to Eureka's rights *vis-a-vis* CTI.); *Citibank,* 666 F.2d at 1196 (The trustee's waiver of the privilege may not bar the officers from asserting their individual privilege in other proceedings.); *Diversified Industries Inc. v. Meredith,* 572 F.2d 596, 611 n. 5 (8th Cir.1977) (If circumstances show that the employee sought legal advice for himself or that counsel acted as a joint attorney then the employee may have a privilege.).

■ However, mere subjective belief that the person is being individually represented is not enough to support the existence of a joint privilege unless the belief is minimally reasonable. *U.S. v. Keplinger,* 776 F.2d 678, 701 (7th Cir.1985). In *In re Grand Jury Proceedings,* 434 F.Supp. 648 (E.D.Mich.1977), *aff'd,* 570 F.2d 562 (6th Cir.1978), the court was willing to consider the existence of a separate privilege for the communicating officer, but strictly construed the privilege.

If he makes it clear when he is consulting the company lawyer that he personally is consulting the lawyer and the law-

yer sees fit to accept and give communication knowing the possible conflicts that could arise, he may have a privilege. But in the absence of any indication to the company's lawyer that the lawyer is to act in any other capacity than as lawyer for the company in giving and receiving communications from control group personnel, the privilege is and should remain that of the company and not that of the communicating officer.

*Id.* at 650. *Accord Keplinger,* 776 F.2d at 700. *See also Eureka,* 743 F.2d at 937 (Eureka and the attorney expressly understood there was to be an attorney-client relationship between them distinct from the one to which CTI was a party.).

■ In the instant case, Westside's corporate counsel states that any communications between himself and the officers and directors occurred while they were acting in their capacity as agents of the corporation and not as individuals. *See* Swain ¶ 4. The officers and directors never requested that the Firm keep matters discussed confidential from the corporation. Swain, supp. ¶ 5. Furthermore, Westside's counsel advised the directors that he could provide only general legal advice to them as a group, but that they were free to retain separate counsel. Swain ¶ 5. These statements are uncontested by the officers and directors. Thus, the advice that the Firm gave to the directors and officers regarding their duties, responsibilities, and potential personal exposure is insufficient to establish a separate privilege.

Further support for FSLIC's position is found in the purposes of the Insurance of Savings and Loan Accounts Statute, 12 U.S.C. § 1724 *et seq.,* the controlling statute in this case. The various amendments and the legislative history of the statute governing insurance of savings and loan associations reflect a congressional intent to use FSLIC to maintain a sound and responsive financial system. For example, in 1966 Congress gave FSLIC increased authority to supervise financial institutions. It was empowered to move quickly to protect investors and to force adherence to the laws. FSLIC was authorized to issue cease and desist orders and to suspend or remove officers or directors if FSLIC believed that the institution or person had violated a rule, engaged in unsafe or unsound practices, breached fiduciary duties, or was about to do so. *See* Sen.R. No. 1482, 89th Cong., 2nd Sess., *reprinted in* 1966 U.S.Code Cong. & Ad.News 3532, 3533; 12 U.S.C. § 1730. Similarly, in 1978, Congress passed amendments giving FSLIC further power to ensure that financial institutions functioned properly. The legislative history underscores FSLIC's responsibility to prevent or cure anticompetitive situations, mismanagement, and abuses by institution insiders. *See* H.R.Rep. No. 95–1383, 95th Cong., 2nd Sess. 7, 9–16, *reprinted in* 1978 U.S.Code Cong. & Ad.News 9273, 9279, 9281–88. The House report enphasizes the fiduciary responsibilities of boards of directors of financial institutions to the institution, the depositors, the stockholders, and the community. FSLIC is charged with ensuring that financial institutions live up to these responsibilities. *Id.* at 9281–2, 9287–8. Because FSLIC wishes to interview the Firm to determine whether FSLIC has any potential causes of action as receiver against the officers and directors, the intent of Congress would be subverted if the officers and directors were able to assert the privilege against FSLIC.

The Supreme Court has held that former corporate managers could not assert an attorney-client privilege when its invocation would frustrate the Bankruptcy Code's goal of uncovering insider wrongdoing. *Commodity Futures Trading Commission v. Weintraub,* — U.S. —, 105 S.Ct. 1986, 1993–94, 85 L.Ed.2d 372 (1985). In the instant case, the legislative history of the controlling statute in the instant case indicates a similar congressional concern and requires a similar denial of the privilege.

## III.  CONCLUSION

Based on the foregoing, the court concludes that FSLIC is the exclusive holder of the attorney-client privilege between

Westside and the Firm, and that the individual officers and directors of Westside do not have a separate attorney-client relationship with the Firm.

IT IS SO ORDERED.