**In re AMERICAN CONTINENTAL CORPORATION, an Ohio corporation, Debtor.**

**American Continental Corporation/Lincoln Savings and Loan Securities Litigation.**

**Nos. CIV 89–1231 PHX–RMB, B–89–3117 PHX–RMB. MDL No. 834.**

United States District Court, D. Arizona.

July 2, 1990.

P. John Owen, Morrison, Hecker, Curtis, Kuder & Parrish, Phoenix, Ariz., for plaintiff.

James J. Feder, Wyman Bautzer Kuchel & Silbert, Los Angeles, Cal., for debtor.

## ORDER

BILBY, District Judge.

The Court is called upon to determine ownership and control of attorney-client privileges associated with communications of pre-conservatorship management of Lincoln Savings and Loan Association (Lincoln). Lincoln operates under a Resolution Trust Corporation-administered conservatorship, following intervention by the Federal Home Loan Bank Board (FHLBB) on April 14, 1989. The events which precipitated the Lincoln conservatorship were marked by protracted sparring between management of Lincoln's ultimate parent, American Continental Corporation (ACC), and former Lincoln management on the one-hand, and federal regulators on the other. ACC, after merging with First Lincoln Financial Corporation, Lincoln's holding company, has vigorously pressed a conservatorship challenge which is currently pending in U.S. District Court for the District of Columbia.

During ACC's stewardship of Lincoln, numerous documents were generated which are now contained in a Document Depository established by this Court as a discovery facility for the legal imbroglio resulting from Lincoln's predicament. ACC, Lincoln, and in an indeterminate number of instances, ACC and Lincoln jointly, are entitled to shield documents from the view of others pursuant to legitimate claims of privilege. Many protected communications doubtless concern the day-to-day operations of Lincoln. Others are presumably more pointedly concerned with the strife between Lincoln and its regulators.

As ACC and the Resolution Trust Corporation (RTC) continue to dispute the legitimacy of the conservatorship, and the future control of Lincoln, the Court must decide which entity controls the privileges bound up with pre-conservatorship Lincoln communications. The parties' principal contentions may be summarized as follows.

### American Continental Corporation's Argument

By expressly enabling savings associations to challenge government conservatorships pursuant to 12 U.S.C. § 1464(d)(6) [1], enacted within the Financial Institutions Reform Recovery and Enforcement Act (FIRREA), Congress has impliedly granted retention and control of the tools necessary to pursue a challenge: among them—control of Lincoln's attorney-client privileges, at least insofar as they are bound to communications concerning Lincoln's legal entanglements with federal regulators. The statutory language upon which RTC relies

---

**1.** FIRREA Section 301, amending Section 5 of the Home Owners' Loan Act, and codified at 12 U.S.C. § 1464(d)(6)(A) states, in pertinent part: "If, in the opinion of the Director (of the Office of Thrift Supervision), a ground for the appointment of a conservator or receiver for a savings association exists, the Director is authorized to appoint ex parte and without notice a conservator or receiver for the savings association. In the event of such appointment, the association may, within 30 days thereafter, bring an action in the United States district court for the judicial district in which the home office of the association is located, or in the United States District Court for the District of Columbia, for an order requiring the Director to remove such conservator or receiver, and the court shall upon the merits dismiss such action or direct the Director to remove such conservator or receiver."

refers to privilege only in a general sense. It does not explicitly refer to attorney-client privilege, nor has it been so construed by any court. The case law upon which RTC relies, principally *Odmark v. Westside Bancorporation, Inc.*, 636 F.Supp. 552 (W.D.Wash.1986) and *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), cannot control the outcome here. Those courts did not address hostile, unilateral conservatorships burdened by many obligations other than safeguarding the association's best interests, nor did they face statutory challenges which could reinstate original management. Moreover, the statutory language RTC invokes is a creature of the Federal Deposit Insurance Act governing banks, and, ACC argues, may have been bootstrapped into the statutory scheme governing savings associations only as a Congressional afterthought. With the hard-fought legal contest over control of Lincoln as yet undecided, and RTC's hold on Lincoln subject to defeasance if ACC is successful, RTC's play for Lincoln's privileges is premature. As to many communications, ACC and Lincoln share a common interest privilege which cannot be waived unilaterally, and which ACC will not waive. If ACC recovers Lincoln, the harm done by a precipitous transfer of Lincoln's privileges to RTC could not be undone.

Resolution Trust Corporation's Argument

RTC succeeds to Lincoln's privileges by virtue of 12 U.S.C. §§ 1821(d)(2)(A) and 1441a(b). The latter section [2] gives RTC, as conservator of a savings association, the same powers imparted to FDIC in Section 1821(d)(2)(A), which provides:

(A) SUCCESSOR TO INSTITUTION. The Corporation shall, as conservator or receiver, and by operation of law, succeed to—

(i) all rights, titles, powers and privileges of the insured depository institution, and of any stockholder, member, account holder, depositor, officer, or director of such an institution and the assets of the institution;

(ii) title to the books, records, and assets of any previous conservator or other legal custodian of such institution.

The case law unequivocally establishes RTC's succession to Lincoln's attorney-client privileges. *Weintraub, supra,* in which the Supreme Court considered an analogous situation, held that a trustee-in-bankruptcy controlled a Chapter 11 debtor-corporation's attorney-client privilege, despite the fact that a court may terminate a trustee's appointment and reinstate a debtor pursuant to 11 U.S.C. § 1105. *Odmark,* citing pre-FIRREA regulation, receiver of a savings and loan association, the Federal Savings and Loan Insurance Corporation (FSLIC), (a predecessor of RTC), succeeded to all of its rights, titles, powers and privileges. Moreover, RTC argues, to the extent ACC and Lincoln shared communications in joint legal representation, there is no attorney-client privilege as between them. RTC must have access to Lincoln's protected communications to fulfill its statutory duties to manage assets, negotiate with borrowers, and investigate and pursue claims.

### The Weintraub Analysis

Because the *Odmark* court dealt with FSLIC control of the privilege under different circumstances and in *dictum,* it does not necessarily control the outcome here. In *Weintraub,* however, the Supreme Court resolved issues concerning control and succession of the attorney-client privilege which bear in important respects on issues presented here. The analytical framework set out in *Weintraub* must guide the Court's inquiry.

Initially, the *Weintraub* Court observed that regulation of the attorney-client privilege in the context of a corporation involves unique considerations because, in

---

**2.** Section 501(4) of FIRREA, amending the Federal Home Loan Bank Act, and codified at 12 U.S.C. § 1441a(b)(4), provides in pertinent part: "[T]he Corporation shall have the same powers and rights to carry out its duties with respect to

institutions described in (3)(A) as the FDIC has under Sections 11, 12, and 13 of the Federal Deposit Insurance Act with respect to insured depository institutions ..."

the words of the high Court, an "inanimate entity" cannot "directly waive the privilege when disclosure is in its best interest." 105 S.Ct. at 1991. The Court enunciated several settled legal principles:

> [F]or solvent corporations, the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors.

> \* \* \* \* \* \*

> [W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers ...

Against this background, the Court conducted a three-part inquiry. First, it looked to the Bankruptcy Code for guidance about a bankruptcy trustee's control over an estate's attorney-client privilege. Finding none, the Court moved to the second query: which of the corporation's "various actors ... is most analogous to the role played by management of a solvent corporation." 105 S.Ct. 1992. The Court found it significant that all corporate property was transferred to a bankruptcy estate represented by a trustee who operated the business, was directed to investigate the debtors' financial activities, and was authorized to recover fraudulent or preferential transfers. On the other hand, the Court observed, the debtors' directors retained no management powers, and, in fact, Congress contemplated their complete ouster. Because the trustee's duties were most like those of management, the Court found, he would control the privilege, "unless such a result interferes with policies underlying the bankruptcy laws." 105 S.Ct. 1992–1993.

In the third step, then, the Court looked to the overall statutory scheme and balanced the federal interests advanced by trustee control of the privilege, against those which might be impaired. The Court perceived that no federal interests were disadvantaged by the arrangement. Conversely, the Court stated, if prior management controlled the privilege, it could obstruct the trustee's search for causes of action arising from mismanagement, and impair the statutory goal to maximize the value of the estate.

### Application of Weintraub

Looking first to FIRREA for guidance, the Court concludes that 12 U.S.C. § 1821(d)(2)(A) bears directly on RTC's powers as both receiver for Old Lincoln and as conservator for New Lincoln. See 12 U.S.C. § 1441a(b)(4). An argument can be made that in the comprehensive FIRREA, Congress has already balanced the federal interests and determined that the integrity of the savings and loan institutions and their depositors are best served by removing former management and transferring all of the institution's rights, privileges, and responsibilities, to the Federal Deposit Insurance Corporation or to RTC under conditions prescribed by FIRREA. Because FIRREA's legislative history is silent concerning the interplay between § 1464(d)(6)(A) and the RTC's broad authority, however, the Court explores the issues raised by the last two prongs of the *Weintraub* analysis.

RTC has had complete managerial control of Lincoln since April 14, 1989 pursuant to its broad statutory authority. See 12 U.S.C. § 1821(c) through (j). It controls Lincoln's property, and like the *Weintraub* trustee, is empowered to pursue causes of action which may return assets to Lincoln. On the other hand, prior management's power is limited to pursuing the conservatorship challenge. RTC's hold on Lincoln is potentially subject to defeasance if ACC succeeds in the conservatorship action, but unless and until that occurs, RTC stands in the position most like that of management of a solvent corporation, and as such, is entitled to control Lincoln's privileges unless substantial federal interests demand a contrary result.

Will the federal interest in permitting the Congressionally-authorized conservatorship challenge be so significantly impaired that the locus of Lincoln's privilege must remain with former management until the outcome of the challenge is clear? ACC believes that giving RTC control of the privilege would negate ACC's statutory right to challenge the conservatorship. It would be tantamount, ACC urges, to letting RTC step right in and wrest control of the challenge action for itself.

The Court concludes that these arguments overstate the potential consequences for Lincoln. It is pivotal that the association, rather than its individual directors, holds the privilege. Former management can pursue the challenge action despite RTC's control of Lincoln's privileges, albeit under more exacting scrutiny invited by fuller disclosure of pre-conservatorship strategies.[3] Indeed, greater scrutiny of the savings and loan industry is one of FIRREA's primary objectives. Although it is true that the privilege may revert to former management if the conservatorship challenge is successful, *actual* management and control by RTC during the pendency of the conservatorship challenge—a result Congress clearly intended—is potentially far more damaging to Lincoln if it is subsequently determined that the conservatorship was ill-conceived. Moreover, just as it is a "painful fact[s] of bankruptcy . . . that the interests of shareholders become subordinated to the interests of creditors" 105 S.Ct. at 1994, Lincoln's interests as an association must be subordinated to the broader interests articulated in FIRREA.

Conversely, permitting former management to control even a portion of Lincoln's privileges pending the outcome of a conservatorship challenge could seriously impede RTC's ability to perform its responsibilities under the law. The need for an unobstructed view of the workings of savings and loan management is as urgent as anything faced by the *Weintraub* bankruptcy trustee.

Finally, RTC control of the privilege will not inordinately chill attorney-client communications in the sphere of savings and loan management, as corporate management is always confronted with the possibility that corporate privileges will shift to a successor.

Finding no overriding federal interest which warrant a different result, the Court holds that RTC controls Lincoln's attorney-client privileges.

### Common Interest Privilege

As to communications made in their common legal interest, Lincoln shares a joint privilege with ACC. See *Matter of Grand Jury Subpoena, Etc., Nov. 16, 1974*, 406 F.Supp. 381 (S.D.N.Y.1975); *Hunydee v. United States*, 355 F.2d 183 (9th Cir.1965); *In re Grand Jury Subpoenas*, 1990 WL 55075 (4th Cir. (Va.)); *In re Sunrise Securities Litigation*, 130 F.R.D. 560 (E.D.Pa. 1989). RTC proclaims that it does not now intend to waive Lincoln's privileges, and this opinion therefore does not reach the question of whether or under what circumstances RTC may be entitled to waive privileges it holds in common with ACC.

### Conclusion

Based on the foregoing,

IT IS ORDERED that RTC may here and now obtain and review all documents as to which Lincoln, or Lincoln and ACC jointly, may make claims of privilege.

IT IS FURTHER ORDERED that RTC may neither directly waive any common interest privilege which it shares with ACC, nor take actions which might be construed as a waiver, without application to and further Order of this Court.

---

**3.** Although not a factor in the Court's decision, the evidence and final argument have been con-cluded in the conservatorship challenge.