SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

ELFINDEPAN, S.A., Southern Financial Group, Tracy Calvin Dunlap, Jr., Barry Lowe, James L. McCall, Strategic Asset Funds, S.A., Edmund Menden, Michael Menden, Michael Zieglmeier, Defendants

and

C.R.C.C. L.L.C. and Patrick Wilson, Relief Defendants.

No. 1:00CV00742.

United States District Court, M.D. North Carolina.

July 18, 2001.

Christy Myatt, Greensboro, NC, Pro se.

Benjamin Arthur Kahn, Adams Kleemeier Hagan Hannah & Fouts, Greensboro, NC, Eric N. Miller, Gregory S. Bruch, Kurt G. Gresenz, Securities and Exchange Commission, Washington, DC, for Plaintiff.

Ernest Clarke Dummit, Winston–Salem, NC, William F. May, K. E. Krispen Culbertson, Culbertson & Associates, Greensboro, NC, Sammi Lynnette Renken, Dummit & Associates, Winston–Salem, NC, Derek J. Allen, Robert A. Singer, Brooks Pierce McLendon Humphrey & Leonard, Greensboro, NC, H. Brent Helms, Robinson & Lawing, Winston–Salem, NC, Denise M. Gunter, Kilpatrick Stockton, L.L.P., Winston–Salem, NC, Philip L. O'Neill, Jacobson Holman, PLLC, Washington, DC, for Defendants.

---

James L. McCall, Lafayette, IN, Pro se.

Michael Menden, Eden Prairie, MN, Pro se.

Michael Zieglmeier, Eagan, MN, Pro se.

## MEMORANDUM OPINION

OSTEEN, District Judge.

This case is now before the court on the following motions: Defendant Elfindepan's Motion to Limit Powers of Receiver; Defendant Elfindepan's Motion to Stay Discovery and to Release Defendant Elfindepan from Contempt; Motion by Receiver to Compel Production; Defendant Elfindepan's Motion for Sanctions Against the Receiver; Defendant Dunlap's Motion to Quash Subpoena and for Protective Order; and Defendant Dunlap's Motion for Stay of Time Period to Respond to Receiver's Discovery Requests. For the reasons stated herein, the court will grant the receiver's motion to compel. The court will deny each of the remaining motions, except for Defendant Dunlap's motion for a stay of time, which will be rendered moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 10, 2000, the Securities and Exchange Commission (SEC) filed a complaint against Defendants for violations of various securities laws stemming from a fraudulent investment scheme in which Defendants allegedly participated. According to the complaint, Defendants, including Elfindepan S.A.[1] (Elfindepan), Southern Financial Group (Southern Financial), Tracy Calvin Dunlap, Jr., and Barry Lowe,[2] defrauded numerous Ameri-

---

1. In Costa Rica, the description S.A. stands for "Sociedo Anonima," a type of Costa Rican business organization. The English transla-

tion, which the court will henceforth use, is "anonymous society."

2. Since the filing of the complaint, several defendants have been added, including James

can investors through the offer and sale of unregistered securities of Elfindepan, a Costa Rican company. In the course of their activities, Defendants allegedly made materially false and misleading statements in order to promote their investment offers.

Following a hearing on August 10, 2000, the court entered a temporary restraining order (TRO) against Defendants, enjoining them from further violations of securities laws, freezing their assets, and granting expedited discovery. On August 17, 2000, prior to the expiration of the TRO, the court granted the SEC's motion for a preliminary injunction ordering, *inter alia,* that Defendants provide an accounting and repatriate the funds of American investors. Following the issuance of the preliminary injunction, Defendants Dunlap, Elfindepan, and Southern Financial jointly retained an attorney, K.E. Krispin Culbertson. Eventually, Culbertson withdrew from his representation of Elfindepan. He continues to represent Dunlap and Southern Financial.[3]

Despite the court's issuance of orders requiring Defendants to produce and disclose documents and information about Elfindepan and Southern Financial, they have failed to comply. The evasion of the orders has been so extensive that on March 23, 2001, the court entered an order finding Dunlap, Elfindepan, and Southern Financial in contempt of court and ordering Dunlap's incarceration pending compliance with the orders. Dunlap remains in custody.

Recently, E. Clarke Dummit has made appearances on behalf of Elfindepan and continues to serve as counsel for the company. Additionally, on March 23, 2001, the court entered an order appointing Christine L. Myatt as receiver in the case.

## II. DEFENDANT ELFINDEPAN'S MOTION TO LIMIT POWERS OF RECEIVER

Since the appearance of Dummit on behalf of Elfindepan and the appointment of Myatt as receiver for Elfindepan and Southern Financial, both attorneys have been filing motions, responses, and other documents on behalf of Elfindepan. Accordingly, Dummit has filed a motion asking the court to limit Myatt's powers as receiver to the preservation of the assets of Elfindepan and Southern Financial by declaring that Myatt's powers do not extend to the actual representation of Elfindepan against the underlying claims in this case, as filed by the SEC.

L. McCall, Strategic Asset Fund, Edmund Menden, Michael Menden, Michael Zieglmeier, C.R.C.C. L.L.C., and Patrick Wilson. The current motions do not relate to these parties.

**3.** On January 25, 2001, Culbertson filed a motion to withdraw as counsel for Southern Financial. On February 28, 2001, the court denied the motion without prejudice, allowing the re-submission of the motion at a later time. Thereafter, Culbertson submitted a motion to withdraw as counsel for both Southern Financial and Elfindepan on March 5, 2001. At the motion hearing held on March 13, 2001, the court instructed Culbertson that he was to remain counsel of record for both entities, pending an appearance by new counsel. The court stated the following to Culbertson: "I had told you earlier that you were to remain as attorney of record in this case, but that you were not required to do more than you thought was necessary, except being there for purposes of notification and compliance with any matters that needed to be served." (Mar. 13, 2001 Hr'g Tr. at 14–18.)

On May 4, 2001, E. Clarke Dummit appeared at a motion hearing on behalf of both Elfindepan and Manuel Carrillo Pacheco. However, no appearances have been made on behalf of Southern Financial. Therefore, Culbertson remains the attorney of record for that company.

In support of his request, Dummit contends that the order appointing Myatt as the receiver limits her authority over Elfindepan to representation of the company in its assertion of claims against others in an effort to recover or preserve assets of the company. He argues that the order does not extend to her the authority to defend the SEC's claims against Elfindepan. Relying on both the traditional role of receivers in such cases and the language of the order appointing Myatt, Dummit contends that her duty is owed to the American investors at issue and not to Elfindepan. He claims that Myatt's general representation of Elfindepan in its defense of the SEC's claims would create a conflict with her protection of the American investors.

 Generally, a receiver is "viewed as an officer of the court occupying a position of a custodian of the property in receivership and owing to all persons interested in such property a discharge of h[er] duties in good faith and impartially insofar as they are concerned." 65 Am. Jur.2d Receivers § 135 (1972). As such, the receiver "is not the exclusive agent or representative of either party to the suit in which [s]he is appointed, and [s]he is not appointed for the benefit of either party, nor does [s]he derive h[er] authority from either one." 65 Am.Jur.2d Receivers § 138 (1972). *See also Lowder v. All Star Mills, Inc.,* 91 N.C.App. 621, 624, 372 S.E.2d 739, 741 (1988) (recognizing that although the appointment of a receiver suspends the authority of the officers and directors of the company, the receiver maintains representation of both the owners and the creditors of the company). Rather, a receiver receives h[er] power and authority directly from the court and therefore is "subject to the court's directions and orders in the discharge of

h[er] official duties." 66 Am.Jur.2d Receivers § 185 (1973).

 Because the receiver is under the direct control of the court, which defines the receiver's powers and places limitations upon her, the scope and nature of a particular receivership will depend on the language of the order appointing the receiver. In the case at bar, the court, in its March 23, 2001, order appointing Myatt as receiver, provided a specific list of duties and powers which she is authorized to perform in the course of her role as receiver for Elfindepan and Southern Financial. Specifically, the court authorized Myatt to take the following actions: "establish a receivership trust account" for Elfindepan and Southern Financial; employ herself and her law firm as counsel for the receiver; employ individuals to assist in the preservation of any assets of the entities; "take and maintain custody, control and possession of all assets and properties" of the entities; demand payment of any insurance claims or any other claims of the companies; "receive and collect all sums of money due or owing" to the companies; transfer all funds of the companies to a receivership trust account; pay any taxes or other expenses owed by the companies; "file an initial report and accounting" of all funds and property owned by the entities; distribute assets of the companies to persons thereto entitled; and "take such other actions as are reasonable and necessary in connection with the administration of such receiverships." (Receivership Order, Mar. 23, 2001, at 2–4.)

The record reflects that all of Myatt's filings and other actions taken thus far have fallen within the scope of the receivership order and have been taken in furtherance of the responsibilities set forth therein. For example, in response to Dummit's pending motion on behalf of Elfindepan to stay discovery, Myatt has filed

a response in objection. Because the receivership order grants her the authority to locate and take possession of all funds and assets of the corporation, she objects to a motion seeking to prolong the discovery process which could provide the very information she requires to locate these funds and assets. Myatt's other filings seek to accomplish similar goals, as authorized by the order appointing the receiver. Her authority is clearly defined in the March 23, 2001, order, and the court finds no basis to place limitations upon her authority as receiver. The court therefore will deny Dummit's motion to limit Myatt's powers as the receiver.

III. DEFENDANT ELFINDEPAN'S MOTION TO STAY DISCOVERY AND TO RELEASE DEFENDANT ELFINDEPAN FROM CONTEMPT

Elfindepan, through Dummit, has filed a motion requesting that the court stay further discovery and release the company from the contempt in which it has been placed for failure to comply with court orders. Because the motion contains two separate requests, the court will examine them individually.

A. *Motion to Stay Discovery*

█ Elfindepan requests that the court stay all discovery until the courts of Costa Rica have determined to what extent, if any, Defendants may disclose information about Elfindepan. According to Elfindepan, Manual Carrillo Pacheco, the Costa Rican attorney for the company, has filed a petition with the Fifth Civil Court of San Jose requesting that it grant permission

for Elfindepan's records to be produced in the current litigation.[4] Elfindepan argues that this court should delay these proceedings and defer to the forthcoming decision of the Costa Rican court regarding the extent of discovery allowed under the laws of that country.

Both the SEC and the receiver object to a stay of discovery or any other delays in the progress of this case. As the SEC stresses, Defendants have been under orders to produce and disclose the relevant information concerning Elfindepan and Southern Financial since August 2000. Not only have Defendants failed to produce any of the requested information, but there is no evidence before the court that the parties even have attempted to comply with the court's orders. In fact, the evasion of this court's orders of disclosure and production has been so extreme and long-lasting that the court has found Defendants to be in contempt for willful failure to comply with the orders. The court will not grant a motion authorizing and condoning this contemptuous behavior.

Additionally, the court finds no justification for granting a stay pending the ruling of a Costa Rican court on the petition allegedly filed on behalf of Elfindepan. There are no authenticated documents before the court evidencing the existence of any such petition. Furthermore, this court consistently has found that Costa Rican law has no effect on the discovery procedures in this litigation.[5] Accordingly, the disposition of the petition, assuming it actually was filed, is irrelevant to this court's decisions regarding discovery or any other matter in this case.

---

4. Attached to the motion are unauthenticated copies of what appear to be the petition and an affidavit of Pacheco verifying that he filed the petition. There is no other evidence properly before the court regarding the petition.

5. For example, at the motion hearing held on January 24, 2001, the court specifically found that Costa Rican law is inapplicable to this case. *See* Jan. 24, 2001, Mot. Hr'g Tr. at 71.

Both the SEC and the receiver object to any stay of discovery because of the time-sensitive nature of this case. Defendants have been under an obligation to produce and disclose information about the company and its investors since August 2000. Without that information, it is impossible for the SEC and the receiver to identify all of the investors who may have been defrauded by Defendants and to locate any remaining assets and funds of the company that may belong to those investors. The difficulty is even greater in light of the fact that the receiver discovered during the May 17, 2001, deposition of Pacheco that Elfindepan's offices in Costa Rica allegedly were burglarized sometime in May and many or all of the company's records, computers, and books were taken. Because of these circumstances, the court rejects this most recent attempt by Defendants to avoid their obligations and therefore will deny Elfindepan's motion to stay the discovery.

### B. Motion for Release from Contempt

■ Following the continued refusal of Defendant Dunlap to provide the court and the other parties with information about the assets and records of Elfindepan and Southern Financial, both he and the companies were found by the court to be in contempt and an accompanying order was issued on March 23, 2001. Consequently, Dunlap was incarcerated and continues to be in custody, pending a finding by the court that he has purged himself of the contempt through compliance with the court's orders.

Although Dummit is counsel for Elfindepan, his motion centers around his request that Dunlap be released from incarceration. Dummit claims that because Dunlap is not the secretary of Elfindepan, he is unable to legally disclose any information about the entity, its officers, directors, or

shareholders. Dummit explains that Costa Rican law imposes a duty upon anonymous societies, such as Elfindepan, to prosecute any person who makes unauthorized disclosures regarding the company. He further offers that only the secretary of an anonymous society has the authority to make any disclosures about the company. Accordingly, he advises that "Mr. Dunlap will face prosecution upon return to Costa Rica if he is forced to produce documents belonging to Elfindepan." (Elfindepan Br. at 6–7.)

The issue of Costa Rican law and its effect on disclosure in this case is not new to the court. Throughout the many months and numerous motions arising from the litigation, Dunlap's own counsel continuously has attempted to excuse his client's noncompliance with the court's disclosure orders by presenting the same argument that Dummit now offers. On more than one occasion, this court specifically has ruled that Costa Rican law is inapplicable to the issues. For example, at the January 24, 2001, motion hearing, to determine, *inter alia*, whether the preliminary injunction issued on August 17, 2000, was proper, the court specifically found the following:

[T]his court finds two reasons that [Costa Rican law is] not applicable: First, Mr. Dunlap is not in Costa Rica. This is a United States matter, before a United States court, and a citizen of the United States, and that he is presently within the confines of the Middle District of North Carolina. So, the Costa Rican statute is not applicable to what is being asked for in this matter. Secondly, [the Cost Rican statute] does not relieve Mr. Dunlap, even if he were a citizen of Costa Rica, of the obligation, because the [statute] clearly says without due cause or just cause, and in this case there is just cause for the revelation of the information that's asked for. So, the

Court makes the finding that the Costa Rican statute, first of all, does not block; and secondly, that even if it were a blocking statute, that it is not operative to divest this Court of its jurisdiction and authority.[6]

(Jan. 24, 2001 Mot. Hr'g Tr. at 71, 11. 6–21.)

Despite the court's clear ruling, Defendants have continued to raise the issue of Costa Rican law and its effect on the disclosure orders. The court consistently has upheld the decision stated at the hearing on January 24, 2001, and continues to uphold that decision now. No provision of Costa Rican law prohibits this court from conducting discovery procedures in the manner in which it sees fit. Defendants have been under an obligation to disclose documents and other information for almost a year and they continue to bear this responsibility today. Nonetheless, the information remains undisclosed. The court will release neither Elfindepan nor Dunlap from contempt until they have purged themselves of the ongoing violations of this court's orders.

Elfindepan alternatively argues that when the receiver was appointed, the company and Dunlap automatically were released from contempt because the receivership order placed all documents and other assets of the company under the control of the receiver. The court rejects this argument on its face. While the court did authorize Myatt to take possession of all assets and funds of the company, it could not wave a magic wand and instantly place the relevant materials in her hands. In order to take control of the materials, she obviously must gain possession of them from the individuals currently in control of the information. Because Elfindepan and Dunlap have refused to give up such control, the order of contempt will stand.

## IV. MOTION BY RECEIVER TO COMPEL PRODUCTION

■ Pursuant to her powers as receiver, Myatt served a subpoena upon Dummit on April 26, 2001, requesting that he produce certain documents related to Elfindepan. Because he still has not complied with the subpoena, Myatt has filed a motion asking that the court order him to do so.[7] Herein, the court has declared that it will deny both Elfindepan's motion to limit the powers of the receiver and its motion to stay discovery and to release Defendants from contempt. In so holding, the court has recognized that in the order appointing Myatt as receiver, she is authorized to "take and maintain custody, control and possession of all assets and properties" of Elfindepan and Southern Financial and that she may take whatever actions "are reasonable and necessary in connection with the administration of such receiverships." (Receivership Order at 2, 4.) The service of a subpoena to produce documents concerning Elfindepan and Southern Financial certainly constitutes a reasonable method of fulfilling her specified duties as receiver. As such, the subpoena issued upon Dummit was proper and Myatt's motion to compel will be granted.

---

6. This ruling was reiterated by the court at another motion hearing held on May 4, 2001. In response to an inquiry about the status of the Costa Rican law issue, the court reminded Defendants that it addressed and decided the issue on January 24, 2001. (May 4, 2001 Mot. Hr'g Tr. at 36–37.)

7. In her motion, Myatt requests that the court hold a hearing in order to facilitate its consideration of the issue. No response to the motion was filed by Dummit. In light of the court's decision as to other pending motions herein discussed, the court will dispose of the motion without a hearing.

## V. DEFENDANT ELFINDEPAN'S MOTION FOR SANCTIONS AGAINST THE RECEIVER

█ Elfindepan, through Dummit, has filed a motion requesting that the court, pursuant to Rule 11 of the Federal Rules of Civil Procedure, impose sanctions upon the receiver in response to two separate courses of conduct. First, he contends that in her attempts to gain access to the assets and funds, which the order authorizes her to obtain, Myatt has requested information protected by the attorney-client privilege. Second, Dummit complains that many of Myatt's requests have been made for the purposes of increasing the costs of the litigation and to harass Defendant Elfindepan.

After setting out the requisite procedure for bringing a motion for sanctions, Rule 11 specifically states that "this rule do[es] not apply to disclosures and discovery requests, responses, objections, and motions that are subject to [the Rules governing discovery.]" Fed.R.Civ.P. 11(d). The requests by Myatt about which Dummit complains were made in her efforts to obtain the relevant information through the process of discovery. For example, in a subpoena she issued to Dummit on April 26, 2001, Myatt made requests for the production of numerous documents related to Elfindepan. Because Dummit brought this motion under Rule 11 and because the rule is inapplicable to the type of discovery requests here at issue, the court will deny his motion for sanctions. The court further notes that even if Rule 11 were the appropriate procedural avenue, Dummit has failed to follow the preliminary steps

required by the rule. In particular, he has provided no evidence that he granted Myatt the requisite 21–day notice period prior to filing the current motion. The motion for sanctions against the receiver will be denied.

## VI. DEFENDANT DUNLAP'S MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER

Dunlap has filed a motion requesting that the court quash a subpoena issued on April 24, 2001, by the receiver, upon K.E. Krispin Culbertson, counsel for Dunlap, in which Myatt orders that the attorney produce documents and answer interrogatories related to Elfindepan and Southern Financial. Dunlap also asks that the court enter a protective order prohibiting further requests of a similar nature by the receiver.

Dunlap bases his motion on three primary arguments.[8] First, he contends that compliance with the subpoena would violate his right against self-incrimination under the Fifth Amendment of the United States Constitution. Second, he claims that the receiver is not a true party to this action and therefore cannot utilize traditional discovery devices to obtain information in the course of her receivership. Finally, the motion argues that compliance by Culbertson with the requests would violate the attorney-client privilege held between Culbertson and Elfindepan, Southern Financial, and Dunlap.

### A. Violation of the Fifth Amendment

█ Compliance with the requests of the receiver would not violate Dunlap's

---

8. In addition to his three main arguments, Dunlap argues that Costa Rican law prohibits the disclosure and production requested by Myatt. Because this court has definitively rejected this argument on multiple occasions, it will not engage in further consideration of the matter. Dunlap also contends that the

subpoena should be quashed because it is duplicative of other pending orders of the court requiring similar disclosures. Considering that such orders are still unfulfilled by Defendants, the court will not limit the receiver's attempts to obtain the requisite information via other avenues.

right against self-incrimination. As this court has reiterated on multiple occasions during the course of this litigation, a corporation cannot assert rights under the Fifth Amendment. *See Braswell v. United States*, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988) (holding that because corporations cannot assert a Fifth Amendment privilege, an officer of a corporation cannot avoid compliance with a subpoena issued upon the corporation even if compliance may incriminate him personally). In fact, when presented with the same argument during a hearing on March 13, 2001, the court found the following:

> Mr. Dunlap, by his own admission, is the chief operating officer, chief financial officer of Elfindepan, who is in charge of the operation of that organization, and as such has dealt in Costa Rica and in the United States. As to Southern, he has testified, and there is an affidavit, which the court accepts, to the effect that he is a trustee of the business entity known as Southern, and that as such he has the full responsibility for the records and operations of those two entities. . . . [A]s such he is required, as the officer—as he has indicated, the officer that controls and runs this corporation— to turn over to the Government that request of information and that accounting.

(Mar. 13, 2001 Hr'g Tr. at 54, 11. 15–23; 55, 11. 14–17.)

The court concluded by stating that "[t]he Court finds that [Dunlap] is not entitled to assert his Fifth Amendment privilege with respect to the records of either of those entities, for the reasons that the Court has already found" and, additionally, that "it is entirely possible that he has waived his personal Fifth Amendment right already anyway." (*Id.* at 55, 11. 18–23.) Because the court previously has completely addressed the issue,

after a full hearing of all relevant parties, it will not grant Dunlap's motion on the basis of Dunlap's Fifth Amendment protections.

## B. Standing of Receiver

Dunlap also claims that he is entitled to his requested relief because the receiver is not a party to this action and therefore cannot utilize the discovery procedures outlined in the Federal Rules of Civil Procedure. As previously discussed in the consideration of Elfindepan's motion to limit the receiver's powers, the receiver receives her authority directly from the court's order appointing her. One of the specific powers granted to Myatt provides that she shall:

> [T]ake and maintain custody, control and possession of all assets and properties of whatever kind and wherever located belonging to or in the possession of Elfindepan, S.A. or Southern Financial Group, including, but not limited to, all books and records of account, funds, securities, property, bank and trust accounts, brokerage accounts, beneficial interests, rights of action, claims, instruments, and evidences of ownership interests.

(Receivership Order, Mar. 23, 2001, at 2–3.)

At the conclusion of the order, after setting out numerous specific powers, the court authorizes Myatt to "take such other actions as are reasonable and necessary in connection with the administration of such receiverships." (*Id.* at 4.) Certainly, the utilization of traditional discovery devices, such as requests for production of documents, is a reasonable action. Furthermore, given the difficulty that both the SEC and the receiver have encountered in obtaining any information from Defendants, the use of discovery devices by

Myatt properly could be considered necessary.

## C. Attorney–Client Privilege

■ Finally, the motion argues that compliance with the subpoena would result in violations of the attorney-client privilege between Culbertson and both Elfindepan and Southern Financial.[9] He claims that because any and all documents and information about the companies in Culbertson's possession were obtained in the course of his representation of them, the privilege extends to all of the subpoenaed information. Myatt counters that as receiver, she has stepped into the shoes of the companies' management and therefore holds the attorney-client privilege. As such, she claims that she is entitled to the requested information and that Culbertson, as former counsel, has no basis to refuse compliance with her requests.

In support of her position, Myatt relies on the United States Supreme Court's decision in *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). In *Weintraub*, the Court was faced with issues involving the control of the corporate attorney-client privilege in the context of bankruptcy proceedings. Following his appointment, the bankruptcy trustee, who originally served as receiver in the case, served a subpoena *duces tecum* on the corporation's previous counsel. *See id.* at 343, 105 S.Ct. at 1988. The former attorney refused to comply, asserting that all information he had obtained in the course of his representation of the company was protected by the attorney-client privilege. *See id.* The trustee contended that upon

his appointment, he succeeded to the privilege and that former counsel therefore could not invoke it. *See id.*

Finding no guidance from the Bankruptcy Code, the Court next "consider[ed] the roles played by the various actors of a corporation in bankruptcy to determine which is most analogous to the role played by the management of a solvent corporation." *Id.* at 351, 105 S.Ct. at 1992. Reasoning that because outside of bankruptcy, the attorney-client privilege is controlled by management of a corporation, the court stated that "the actor whose duties most closely resemble those of management should control the privilege in bankruptcy." *Id.* at 351–52, 105 S.Ct. at 1992. Noting that the trustee had the authority to investigate financial matters of the corporation, to sue officers, directors and others in order to recover any improper transfers, to use or sell corporate property, and to otherwise oversee operations of the company, the Court found him to be the actor most analogous to management and therefore held that he held the privilege, even as to information obtained prior to his appointment. *See id.* at 352, 105 S.Ct. at 1992–93.

In so holding, the court rejected the respondent's argument that because his primary loyalty lies with creditors and not the shareholders of the corporation, the trustee should not have the right to hold the attorney-client privilege. *See id.* at 354–55, 105 S.Ct. at 1994. In the Court's view, any duty owed to creditors did not create a risk because "[w]hen a trustee is appointed, the privilege must be exercised in accordance with the trustee's fiduciary duty to *all* interested parties[,][e]ven

---

9. Although he failed to discuss or provide support for the argument, Culbertson also claims that compliance with the subpoena would violate the attorney-client privilege held between Culbertson and Dunlap. The subpoena at issue only requests information pertaining to Elfindepan and Southern Financial and does not seek any information that is personal to Dunlap. Therefore, the court rejects this contention.

though in some cases the trustee's exercise of the privilege will benefit only the creditors." *Id.* at 344, 105 S.Ct. at 1989 (emphasis added).

Finally, the Court considered the effect that its decision would have on the goals of the overall scheme contemplated by the Bankruptcy Code. In so doing, the Court found it important that "vesting control over the attorney-client privilege in the trustee will facilitate the recovery of misappropriated corporate assets," the primary goal of his appointment. *Id.* at 354, 105 S.Ct. at 1994. Without the privilege, "the trustee might not be able to discover hidden assets or looting schemes," thereby obstructing the goal of maximizing the value of the estate. *Id.* Based on these findings, the Court held that the privilege belonged to the trustee.

The holding of *Weintraub* has been applied to a case involving a receiver. In *Odmark v. Westside Bancorporation, Inc.,* 636 F.Supp. 552, 554 (W.D.Wash.1986), the court recognized that because the receiver succeeded to the rights and powers of the company and its management, he therefore "succeed[ed] to the corporate attorney-client privilege which existed between" the corporation and its former counsel. Relying on *Weintraub,* the court declared that the officers and directors of the corporation therefore could not assert an individual privilege. *See id.* at 556.

Although the case at bar lies outside of the bankruptcy context, *Weintraub* supplies a close analogy to the current circumstances. Like the trustee in *Weintraub,* Myatt, pursuant to her designated responsibilities as receiver, has attempted to recover certain corporate documents and other information from the former counsel

of the two corporations at issue, Elfindepan and Southern Financial. Like the former corporate counsel in *Weintraub,* Culbertson is refusing to comply with the requests, claiming that the attorney-client privilege prevents him from producing or disclosing any information obtained in his capacity as attorney for the corporations.

Guided by the Supreme Court's roadmap in *Weintraub,* the court initially finds that for purposes of the current motion, the receiver is the actor most analogous to management of the two companies at issue. Similar to the *Weintraub* trustee, Myatt's powers as receiver include her authority to maintain possession and control of all of the corporate assets, assert and pursue all claims and other demands of the entities, and oversee the financial operations of the entities by, *inter alia,* transferring all funds into receivership accounts and paying fees, taxes, insurance premiums, and other expenses of the entities. *See* Receivership Order at 2–4. Because her authority to conduct these activities renders Myatt the actor most analogous to management of Elfindepan and Southern Financial, she is entitled to hold the corporate attorney-client privilege of the companies.[10]

Additionally, like the *Weintraub* Court, this court finds it significant that without succession to the attorney-client privilege, the receiver would encounter difficulties in discovering hidden assets and other potential schemes. Indeed, as is apparent from the record, both the SEC and Myatt have encountered continual obstacles in their attempts to recover any assets and corporate records of these companies. Application of the privilege will allow Myatt easier access to the information she requires for

**10.** Additional authority for this conclusion is found in 65 Am.Jur.2d Receivers § 146 (1972), which recognizes that in most cases, the receiver of a corporation "exercises the functions of the board of directors, managers and officers" and thereby directs the company's operations.

the fulfillment of her receivership duties. Dunlap's motion to quash the receiver's subpoena and for a protective order against her will be denied.

## VII. DEFENDANT DUNLAP'S MOTION FOR STAY OF TIME PERIOD TO RESPOND TO RECEIVER'S DISCOVERY REQUESTS

Dunlap has filed a motion to stay the time for responding to the requests in the subpoena Myatt served upon Culbertson on April 24, 2001. The motion requests that the court stay the time period until it has ruled on his motion to quash the subpoena. Because the court will deny Dunlap's motion requesting that the subpoena be quashed and that a protective order be issued, his motion for a stay of time in which to respond to the subpoena will be rendered moot.

An order in accordance with this memorandum opinion shall be filed contemporaneously herewith.

### ORDER

For the reasons set forth in the memorandum opinion entered contemporaneously herewith,

IT IS ORDERED that the Receiver's Motion to Compel Production [135–1] is granted.

IT IS FURTHER ORDERED that Defendant Elfindepan's Motion to Limit Powers of Receiver [111–1], Defendant Elfindepan's Motion to Stay Discovery [98–1] and to Release Defendant Elfindepan from Contempt [98–2], Defendant Elfindepan's Motion for Sanctions Against the Receiver [116–1], Defendant Dunlap's Motion to Quash Subpoena [107–1] and for Protective Order [107–2] are denied.

IT IS FURTHER ORDERED that Defendant Tracy Calvin Dunlap, Jr.'s Motion for Stay of Time Period to Respond to Receiver's Discovery Requests [125–1] is moot.